(Decided 4th May, 1883.)

HENRY V. D. JOHNS *vs* SARAH W. HODGES, and THOMAS HARRIS HODGES, her husband, and others.

*Non-age of a Juror—After verdict rendered—Costs—Trial of Issues from the Orphans' Court.*

After verdict rendered, it is too late to object that a juror was not of proper age, although the party was not aware of the fact prior to the verdict.

The awarding of costs in a case of the trial of issues from the Orphans' Court, is for that Court exclusively.

APPEAL from the Court of Common Pleas.

The following issues were raised in the Orphans' Court of Baltimore County, and by said Court were directed to be tried in the Circuit Court for said county, between the appellees as plaintiffs, and the appellant as defendant. The issues were afterward removed from the Circuit

Court for Baltimore County, to the Court of Common Pleas, where a trial was had:

1st. Whether the paper-writing, dated on the first day of May, 1878, and purporting to be the last will and testament of John T. Johns, was signed by said John T. Johns, or by some other person in his presence, and by his express direction, and attested and subscribed in his presence, by three or four credible witnesses?

2nd. Whether the said paper-writing, dated on the first day of May, 1878, and purporting to be the last will and testament of said John T. Johns, was executed by said John T. Johns, when he was of sound and disposing mind, and capable of executing a valid deed or contract?

3rd. Whether the execution by said John T. Johns, of said paper-writing, bearing date the first day of May, 1878, and purporting to be the last will of said John T. Johns, was procured by undue influence, exercised and practised upon said John T. Johns, and constraining his will therein?

4th. Whether the paper-writing, bearing date, on the eleventh day of June, 1878, purporting to be a codicil to the last will of John T. Johns, was signed by the said John T. Johns, or by some other person in his presence, and by his express direction, and attested and subscribed in his presence by three or four credible witnesses?

5th. Whether the said paper-writing, bearing date on the 11th day of June, 1878, and purporting to be a codicil to the last will and testament of the said John T. Johns, was executed by the said John T. Johns when he was of sound and disposing mind, and capable of executing a valid deed or contract?

6th. Whether the execution of the said paper-writing, bearing date on the 11th day of June, 1878, and purporting to be a codicil to the last will and testament of said John T. Johns, was procured by undue influence exercised and practised upon said John T. Johns, and constraining his will therein?

Johns *vs.* Hodges, *et al.*

7th. Whether the paper-writing, bearing date on the 9th day of August, 1879, and purporting to be a second codicil to the last will and testament of the said John T. Johns, was signed by the said John T. Johns, or by some other person in his presence, and by his express direction, and attested and subscribed in his presence by three or four credible witnesses?

8th. Whether the said paper-writing, bearing date on the 9th day of August, 1879, and purporting to be a second codicil to the last will and testament of the said John T. Johns, was executed by the said John T. Johns when he was of sound and disposing mind, and capable of executing a valid deed or contract?

9th. Whether the execution of the said paper-writing, bearing date on the 9th of August, 1879, and purporting to be a second codicil to the said last will and testament of the said John T. Johns, was procured by undue influence exercised and practised upon said John T. Johns, and constraining his will therein?

10th. Whether the paper-writing, bearing date on the 20th day of November, 1880, purporting to be another last will of said John T. Johns, was signed by said John T. Johns, or by some other person in his presence, and by his express direction, and attested and subscribed in his presence by three or four credible witnesses?

11th. Whether the said paper-writing, bearing date on the 20th day of November, 1880, and purporting to be the last will and testament of said John T. Johns, was executed by said John T. Johns when he was of sound and disposing mind, and capable of executing a valid deed or contract?

12th. Whether the said paper-writing, bearing date on the 20th day of November, 1880, and purporting to be the last will and testament of said John T. Johns, was procured by undue influence exercised and practised upon said John T. Johns, and constraining his will therein?

·13th. Whether the paper-writing, bearing date on the 18th day of December, 1880, and purporting to be a codicil to the last will and testament of John T. Johns, or by some other person in his presence, and by his express dictation, and attested and subscribed in his presence by three or four credible witnesses?

14th. Whether the said paper-writing, bearing date on the 18th day of December, 1880, and purporting to be a codicil to the last will and testament of said John T. Johns, was executed by said John T. Johns, when he was of sound and disposing. mind, and capable of executing a valid deed or contract?

15th. Whether the execution by said John T. Johns of said paper-writing, bearing date on the 18th day of December, 1880, and purporting to be a codicil to the last will and testament of said John T. Johns, was procured by undue influence exercised and practised upon said John T. Johns, and constraining his will therein?

The jury found on the first, third, fourth, sixth, seventh, ninth, tenth, twelfth, thirteenth and fifteenth issues for the defendant, and on the other issues they found for the plaintiffs.

The ninth prayer of the defendant, to the rejection of which exception was taken and included in his second bill of exceptions, is as follows:

9. That even if the jury believe from the evidence that the testator, John T. Johns, was, for many years, a man of very intemperate habits, and addicted to the excessive use of liquor from time to time, and that when under the influence of liquor, or recovering from its effects, he was incompetent to make a will, and that he suffered from nervousness, melancholy and depression of spirits, and that he had, or that he believed that he had, an hereditary weakness, taint or tendency to insanity, and to intemperance, or to either, and that he entertained a violent antipathy to Horace Love and his family, and to those

nearest to said testator in blood, even should the jury believe that such antipathy was for a fancied and unreal cause; and if they believe that he made and destroyed a number of wills before making those involved in this suit; and that he had a suicidal mania, and at last committed suicide; and if they believe all the other facts as to the habits, manners, actions, conversations, opinions and beliefs of said Johns on any and all subjects, and all other facts of any kind, offered in evidence by, or relied upon by the, plaintiffs, as tending to prove that said Johns was of unsound mind; nevertheless, unless the jury believe from all the evidence in the case, that at the several times at which the said Johns executed the wills and the codicils thereto, mentioned in the issues now on trial, he was in fact of unsound mind, and not capable of making a valid deed or contract, then their verdict must be for the defendant on the second, fifth, eighth, eleventh and fourteenth issues.

The case is further stated in the opinion of the Court. The defendant appealed.

The cause was argued before MILLER, STONE, ALVEY, IRVING, and RITCHIE, J.

*R. R. Boarman, James A. Buchanan,* and *Charles Marshall,* for the appellant.

*Stewart Brown, Arthur W. Machen,* and *I. Nevett Steele,* for the appellees.

RITCHIE, J., delivered the opinion of the Court.

On the issues submitted to the jury in this case they found for the defendant in those relating to the execution of the several alleged wills and codicils of John T. Johns, and in those presenting the question of undue influence; and found for the plaintiffs as to those presenting the ques-

tion whether, at the time of their execution, the said Johns was of sound and disposing mind, and capable of executing a valid deed or contract.

After the verdict was rendered, the defendant, discovering that two of the jurors were under twenty-five years of age, on the ground of this want of proper age and his previous ignorance of it, filed a motion for a new trial, and also a petition that the Court refuse to certify the verdict of the jury to the Orphans' Court, because void and illegal.

The Court refused to grant a new trial and also to grant the petition, which it treated as in the nature of a motion for a new trial upon the ground that the objection was not taken in time.

In the course of its opinion upon the point presented, the Court forcibly remarks: "It was competent for the defendant to have made the proper inquiries, and after having satisfied himself on the subject, to have made the objection before the juror was sworn, but this he neglected to do. He waited until he had lost his case. If a party to a suit may omit to make such inquiries until after a verdict has been rendered against him, and may then set it aside on discovery and proof of the existence of a good cause of challenge against any one of the jury, it would introduce an additional element of uncertainty in the administration of justice, and lead in many cases to great and unnecessary delay and expense."

The defendant could not but regard the Court's dealing with the petition as a motion for a new trial, as giving it a liberal effect; for if taken to operate as a motion in arrest of judgment, as such a motion must be based on matter appearing in the record, the alleged disqualification not appearing therein, it could not have been entertained.

These applications to the Court being an appeal, in effect, to the discretion of the Court to grant a new trial, the exercise of the Court's discretion is not a subject of review in this tribunal.

If, however, the petition not to certify the verdict to the Orphans' Court was a proper proceeding, or could be considered a motion in arrest of judgment, neither of which we concede, we are clearly of opinion that the weight of authority, especially in the modern decisions, is that disqualifications in a juror, of the nature of that in the present instance, must be taken advantage of before the rendition of the verdict. The usual method is by challenge before the juror is sworn or the trial begins. When this course is pursued, if the Court improperly refuses to sustain the objection, the party prejudiced may save his rights by proper steps on appeal.

It is true that circumstances may exist which might justify the Court in setting aside a verdict for a disqualification the subject of challenge, but at that stage of the case, as a general rule, the matter is wholly within its sound discretion.

Under our present jury system, while the law aims to exclude persons under twenty-five years of age from serving on juries, from the nature of the methods prescribed by the statute for drawing a jury, no certain means are provided for the absolute exclusion of such persons. The presumption arises, therefore, not that the officers charged with the duty of preparing the lists have wholly succeeded in securing those free from all statutory disability, but that they have succeeded so far as diligence and good faith within the scope of their opportunities have enabled them to do so. That the officers charged with the selection of the jury will endeavor to discharge that duty according to law is an obligation not peculiar to those who provide the jury under our present system; but has been incident to the summoning of jurors from time immemorial. But the presumption that jurors only have been provided who have the proper legal qualifications has not been of that character as to render needless the right of challenge. The right of challenge itself is a safeguard

provided by law in contemplation of the contingency that the officers whose duty it is to select only qualified persons have failed in the performance of that duty. It is a means specially provided by which a party to a suit may readily and effectually protect himself against any oversight or neglect committed in the original selection. That men may be, and are, summoned, who are not contemplated by the law as the subjects of jury duty, is common experience. And as the consequences of such an error can be readily obviated by inquiry and challenge when they come to be sworn, it is *laches* not to avail of so simple and efficacious a means of protection, where prejudice is apprehended or may be rendered impossible, as examination and challenge before the jury is empanelled. Not to exercise this right, when so simple a matter as the age of the juror is to be ascertained, or where he resides, but to proceed to trial uninformed, and then endeavor after verdict to avail of a defect in these respects, would be not only to entail a loss of time, labor and money that a little diligence at the outset would have prevented, but to offer an inducement to suitors to await the verdict before questioning the qualification of the juror, that, if favorable, the objection may be suppressed, and if adverse, that it may then be called into requisition. No such lottery is to be encouraged.

Among the numerous cases which decide that what is cause for challenge cannot be relied on to set aside the verdict, if the right of challenge has not been exercised, are *Minna Queen vs. Hepburn,* 7 *Cranch,* 290; *Hollingsworth vs. Duane,* 4 *Dall.,* 353; *Amherst vs. Hadley,* 1 *Pick.,* 38; *People vs. Jewett,* 6 *Wendell,* 386; *United States vs. Baker,* 3 *Benedict,* 68; *Gormley vs. Laramore,* 40 *Ga.,* 253; *Wassum vs. Feeney,* 121 *Mass.,* 93; *Rex vs. Sutton,* 8 *Barn. & Cress.,* 417.

The fact that the party was not aware of the disqualification when the jury was empanelled is not material;

Johns *vs.* Hodges, *et al.*

because he *might* have known it. In the cases in 4 *Dall.*, 3 *Benedict*, 121 *Mass.*, and 40 *Ga.*, just cited, the disqualification was not known when the juror was sworn. The case in 121 *Mass.*, was very similar in its facts to those relied on by the appellant. The objection was to the infancy of the juror, which was unknown to the defendant until the time of making his motion to set aside the verdict. GRAY, C. J., in delivering the opinion of the Court, fully reviews the decisions bearing on the subject. Lord TENTERDEN, in *Rex vs. Sutton*, goes so far as to say: "I am not aware that a new trial has ever been granted on the ground that a juror was liable to be challenged, if the party had an opportunity of making his challenge."

In the case of *Green vs. State*, 59 *Md.*, 123, which was brought up on writ of error, a motion in arrest was made because two of the jurors were over seventy years of age. The Court there say: "According to all the authorities, an objection of this character should have been made at an earlier stage of the cause to be of any avail;" citing 1 *Bish. on Crim. Proc.*, 3rd *Ed.*, 886, and a number of adjudications to that effect.

The only exception as to the evidence taken by the appellant was in connection with the testimony of Beckley, a witness produced by the defence, to show the mental capacity of Johns, from his intelligence in business transactions.

The testimony consisted in the relation of a conversation between the witness and Johns, in which Johns asked witness the law with regard to obtaining money under false pretences, explaining that a certain Dr. Henry had borrowed some money from him, and when pressed for payment had said that Johns ought not to be uneasy, as the stock in his drug store was sufficient to cover the claim. Johns went on to say, "When I came to inquire I find he don't own that stock."

Defendant then offered in evidence a bill of sale from Dr. Henry to his father, the offer being made "for the

purpose of showing a business transaction, as narrated by Mr. Johns, and the correctness of his position and views, with reference to that transaction." An objection was made to the admissibility of this evidence, and the objection being sustained, the defendant excepted. The defendant continuing his examination asked the witness, "I understood you to say that he found that this man did not own the stock of goods in his drug store?" to which witness replied, "That is what he stated to me; he did not say it was a bill of sale or anything else; he said 'I find he does not own it.'" The witness added nothing more in this connection, and after detailing other facts in the history of their intercourse, expressed his opinion of Johns' competency to transact any business he had to do.

So far as the record discloses, it does not appear at what time the bill of sale was given, or that it covered the goods in the drug store. It was not mentioned in the conversation with Beckley, who knew nothing whatever about it. The conversation, therefore, had no connection with the bill of sale, although the conversation was sought to be made the basis of its introduction. There was no proof that Johns himself had ever seen or heard of it. Its relevancy is not apparent, and in any aspect it could not have been material. Under all the circumstances attending this offer, and from the nature of the proof itself, we do not feel, in view of the intendment of law in support of the Court's ruling, warranted in reversing it. *Burtles vs. State*, 4 *Md.*, 273; *Reynolds vs. Juliet*, 14 *Md.*, 120.

The remaining exception taken by the defendant relates to the rulings upon the prayers.

The plaintiffs offered six prayers, the substance of which was respectively as follows:

The first prayer,—that the jury cannot find for the defendant on the issues relating to the mental condition of John T. Johns, unless they find that he was of sound and

disposing mind at the time of executing his alleged wills and codicils; and defining what is meant by testamentary capacity, and the effect, in determining this capacity, of the character of his estate and the relative claims of those who should be the objects of his bounty.

This prayer was granted in connection with defendant's fourth and fifth prayers, and the plaintiffs' sixth prayer.

The second prayer,—that if the jury find from the evidence that said Johns was under the influence of any insane delusion or delusions with respect to the disposition of his property, and the wills and codicils in issue were the direct consequence of such delusion or delusions, then they should find for the plaintiffs on the issues as to mental capacity.

This prayer was conceded.

The third prayer,—that if the jury find from the evidence that said Johns was under the influence of any permanent delusion or delusions at the time of the execution of said wills and codicils, then, although they should find said wills and codicils were not the direct consequence of such delusion or delusions, yet it is a question for the jury to determine whether the mind of said Johns was so disordered as to have rendered him at the time of the execution of said wills and codicils not of sound and disposing mind and capable of executing a valid deed or contract.

This was also conceded.

The fourth,—that it is the province of the jury to decide upon the testamentary capacity of said Johns at the time of the execution of the wills and codicils in question, and in doing so it is competent for them to take into consideration, with all the other evidence, an hereditary predisposition to insanity, if they should find such to have existed in him, and the presence in his mind of insane delusions, if they shall find such, and shall find upon all the evidence that he was of unsound mind, and that such delusions

were habitually and constantly present with him, although not at all times exhibited, and that said wills and codicils were the result of such delusions; then they must find for the plaintiffs upon the issues relating to his mental unsoundness, although the jury should find that said Johns made deeds and leases, and conducted all his affairs with acuteness and intelligence and in his ordinary business appeared rational and sane.

This was conceded, with the tenth prayer of the defendant, also conceded.

The fifth,—if the jury believe from the evidence that said Johns labored under an insane antipathy against the descendants of R. Horace Love and his wife, being the sister of said Johns, and that he executed the said wills and codicils or any of them, under the influence and control of such insane antipathy, and would not so have disposed of his property to their prejudice if his mind had been free from such insane antipathy, then they must find for the plaintiffs upon the issues of testamentary capacity, in reference to any of said wills or codicils which they may find to have been executed under the control of said insane antipathy.

This was also conceded.

The sixth prayer,—if the jury find from the evidence that, before the time of executing the wills and codicils in issue, the mind of said Johns was disordered and unsound, and find that he labored under any insane delusion or delusions, as defined in the plaintiffs' second prayer, and that said mental unsoundness was of a permanent character; then the general presumption of his sanity is overcome in this case.

This prayer was likewise conceded.

The defendant offered ten prayers, but one of which, the ninth, was rejected; all the others were conceded, or granted absolutely, except the fourth and fifth, which were granted in connection with plaintiffs' sixth prayer.

The exception of defendant on the prayers was to the rejection of his ninth prayer, to the refusal to grant his fourth and fifth except in connection with the plaintiffs' sixth, and to the granting of plaintiffs' first prayer in connection with defendant's fourth and fifth and plaintiffs' sixth.

The fourth and fifth prayers of defendant explicitly instruct the jury that the law presumes the said Johns to have been of sound mind when he executed the wills and codicils in question, and that the burden of proof is upon the plaintiffs to satisfy the jury that said Johns was not of sound mind at the time of their execution; and that unless they so satisfy them their verdict on the issues as to his sanity must be for the defendant. The sixth prayer of the plaintiffs, that was conceded by the defendant, and which he objects to being connected with his fourth and fifth prayers, simply embodies the well-settled rule, that if the evidence shows the mind of the testator to have been permanently unsound before the execution of his will, and was under the influence of an insane delusion of which his will was the offspring, then the general presumption in favor of his sanity was overcome.

The first prayer of the plaintiffs, as we have seen, contains the instruction that the jury cannot find for the defendant on the issues of testamentary capacity, unless they find that the said Johns, at the time of the execution of his alleged wills and codicils, was of sound and disposing mind, capable of executing a valid deed or contract.

This prayer is objected to on the ground that it shifts the *onus* of proof and ignores the legal presumption of sanity, which of itself, if not overcome, would entitle the defendant to a verdict on the issues of mental soundness.

If this prayer stood alone it would be material to consider this objection. But even if liable from its unqualified and general statement of the proposition it contains, to mislead the jury into supposing that the said Johns

was not to have the benefit of the legal presumption of his sanity, and that the *onus* of proof was upon the caveatees to establish it; its error was corrected and its danger wholly obviated by the plain and emphatic instructions granted in the defendant's fourth and fifth prayers, in connection with which only could the jury consider it. And not only was any mistake as to the effect of plaintiffs' prayer, on the part of the jury thus guarded against; but in the eighth prayer of defendant the jury was again clearly and pointedly reminded of the legal presumption of sanity raised by the law in favor of Johns' soundness of mind, and that proof of his insanity "rests upon the caveators, and nothing short of establishing that fact to the satisfaction of the jury will entitle them to a verdict in their favor, under said issues."

The correctness of defendant's ninth prayer is the last point for consideration.

The purport of the prayer is not free from ambiguity; and there was some danger of the jury's misapprehending its scope and application. Nor do we clearly perceive that if granted it would have given the jury a clearer understanding of the nature of the issues than was provided in the instructions they received, or that its denial could work any detriment to the defendant. Even if the Court erred in refusing it, the law of the case was so amply and correctly stated upon the various aspects of the testimony in the instructions that were given, we should not deem it sufficient cause for reversal.

It follows from our views thus expressed of the rulings of the Court below that they must be affirmed.

The awarding of costs in a case of trial of issues from the Orphans' Court is for that Court exclusively. The Court of law, in which the issues are tried, has no power to enter a judgment for costs on the verdict of a jury, and this Court is equally without authority in this respect.

*Art.* 93, *sec.* 250, *of the Code ; Brown vs. Brown,* 22 *Md.,* 103 ; *Levy and Barry vs. Levy,* 28 *Md.,* 25.

*Rulings affirmed, and
cause remanded.*

