Me. Justice Montgomery
delivered the opinion of the Court:
In December, 1882, an indictment was found and on the 19th of the following January filed, of which the following is a copy:
“The grand jurors of the United States of America in and for the County and District aforesaid, upon their oath do present:
“That one Jacob P. Angney, late of the County and District aforesaid, on the twenty-fifth day of November, in the year of our Lord one thousand eight hundred and eighty-two, with force and arms at the County and District aforesaid, in and upon one Thomas R. Turnbull, he, the said Thomas R. Turnbull, in the peace of God and of the said United States of America, then and there being, feloniously did make an assault, with the intent him, the said Thomas R. Turnbull,’then and there feloniously to kill; and other *74 wrongs and injuries to the said Thomas B. Turnbull then and there did, to the great damage of the said Thomas R Turnbull, against the form of the statute in such case made and provided, and against the peace and Government of the United States of America.”
In March last another indictment was found and filed of which the following is a copy:
“The grand jurors of the United States of America in and for the County and District aforesaid upon their oath do present: That one Jacob P. Angney, late of the County and District aforesaid, on the 26th day of November, in the year of our Lord one thousand eight hundred and eighty-two, with force and arms, at the County and District aforesaid, in and upon one John H. Wilmot, he, the said John H. Wilmot, in the peace of God and of the said United States of America then and there being, feloniously did make an assault, with the intent him, the said John H. Wilmot, then and there feloniously to kill, and other wrongs and injuries to the said John H. Wilmot then and there did, to the great damage of the said John IP. Wilmot, against the form of the statute in such case made and provided and against the peace and Government of the United States of America.”
Shortly thereafter and during the March, 1887, Term of the Criminal Court, the two were consolidated. The trial began on the 20th of April and was concluded ten days later, resulting in a verdict of “ guilty of assault ” on the first charge and of “guilty as indicted” on the second.
On the 4th day of May the defendant filed two motions, one in arrest of judgment and the other for a new trial, of which latter motion the following is a copy:
“Now comes the defendant by his attorneys, Messrs. Chip-man, Smith & Beall, and moves the. Court to set aside the verdict rendered in this cause on the 30th day of April, 1887, and to award him a new trial, for the following reasons, viz:
*75 1. Because said verdict was contrary to law.
2. Because said verdict was contrary to the evidence.
3. Because of material evidence discovered since the trial, not ascertainable by diligence before said trial.
4. Upon errors of law by the Court in ruling upon the admission of testimony during said trial.
5. Upon exceptions to the rulings of the Court on said trial.
6. Because said verdict was inconsistent and unreasonable.
7. Because of misconduct on the part of the jury.
8. Because the said indictment was found by a grand jury illegally constituted.
9. Because the indictment No. 16,598, for the alleged shooting of one John H. Wilmot, was found by a grand jury constituted contrary to law, in this:- that one of the members of said grand jury was at the time he was accepted and sworn, at the time of the finding of said indictment, over the age of sixty-five years, and therefore incompetent to serve as a member of said grand jury.
10. Because the jury which returned the verdict was illegally constituted.
11. Because the jury which returned the verdict of guilty in said causes was constituted contrary to law, in this: that two of the members of said jury were at the time they were accepted and sworn as such, and who sat on said trial and returned said verdict, were over the age of sixty-five years, and therefore incompetent to serve as members of said jury.
12. Because the indictment No. 16,598, for the alleged shooting of John H. Wilmot, was found more than three years after the alleged offense was committed, as appears on the face thereof; and said offense is therefore barred by the Statute of Limitations.’’
When these motions were filed they were accompanied by the affidavit of the defendant, of which affidavit the following is a copy:
*76 “ Jacob P. Angney, being duly sworn, deposes and says that he is the defendant in the above entitled causes; that at the time of the finding of the indictment No.-, known as the Wilmot indictment, he was not in said District, and had no knowledge that such indictment had been found until I was informed by counsel; that he is informed and believes that one of the grand jurors for the present term who found the indictment No.-, known as the Wilmot indictment, was, at the time he was accepted and sworn as a grand juror, and at the time of the finding of said indictment, over the age of sixty-five, and therefore incompetent; and that he did not know of such incompetency of such grand juror until after his conviction in this Court; that he is informed and believes that one or more of the petit jury who tried the above mentioned causes were over the age of sixty-five, and are therefore incompetent and disqualified, and that he did not know of this fact until after his conviction.”
No other affidavit or showing was filed with the motions or either of them. Subsequently, however, several further affidavits were filed in support of, and one or more in opposition to, these motions.
Thereafter, and on the 20th day of May, both these motions were submitted to the associate justice who presided at the trial; and he, being in doubt as to what disposition should be made of the latter motion, certified the same to this Court to be heard in the first instance and for its opinion thereupon, “ and especially upon the two questions of law involved and * * * pressed * * * viz.: ”
First, Do the indictments or either of them charge an indictable offense?
Second, Provided it be true that the juror Fisher was upward of sixty-five years of age at the time of the commencement of the then present term of Court, should the verdict be treated as a nullity and set aside?
This motion so certified has been argued and submitted *77 to this Court. At the outset the District Attorney objected, as he had previously objected before the trial justice:
First, To the consideration of the motion, for the reason that it was indefinite and not sufficiently specific; and,
Second, To the consideration of any affidavit or showing filed or made after the filing of the motion itself.
The motion which has been certified to us (the motion for new trial) is certainly somewhat indefinite; and the affidavit filed therewith affords very little if any aid. Besides, it is by no means clear that the question of the sufficiency of the indictments is presented in this motion. Again, the affidavits, which were filed after the motion and in support thereof and without express leave of the Court, were undoubtedly irregularly filed.
A motion for a new trial is required by the rule to be filed within four days after the verdict. On or before the filing of the motion the showing and the whole of it upon which the motion is based should be filed and copies of such showing duly served on the District Attorney. Undoubtedly, however, the time within which the motion may be filed, or the showing in whole or in part made, might have been extended by the trial Court; and undoubtedly also that Court might, or this Court may, in its discretion, entertain and consider the subsequent affidavits.
In addition to the showing which was actually filed in the case it appears that the trial justice allowed witnesses to be called to testify before him upon the question of the age of the juror. Inasmuch, therefore, as the case appears to be one of considerable importance, and inasmuch as the motion under consideration does assert that the “ verdict was contrary to law,” and inasmuch as the trial judge allowed to be presented for consideration at the hearing all the affidavits above referred to, together with the other showing, and inasmuch as he took under consideration both the questions so certified by him for our consideration, upon the entire showing it is thought best' to entertain and determine both *78 the questions so certified. This is done, however, without admitting the right of the defendant to insist upon the consideration of a motion so indefinite, or of a showing so irregularly presented.
The first question for determination is the one relating to the sufficiency of the indictments, the first of which alleges that the defendant “ feloniously did make an assault ” upon Thomas R. Turnbull, “ with the intent him, the said Thomas R. Turnbull, then and there feloniously to kill.” The second indictment alleges the assault to have been “ feloniously made upon with intent to feloniously kill John H. Wilmot.” Counsel for defendant urge that a charge of “ assault with intent to kill ” is simply a charge of assault and nothing more; that therefore the defendant stands charged in each of the indictments with nothing but a simple assault; that a simple assault is not an indictable offense and hence the indictments are void.
The statute upon this subject is Section 1150 of the Revised Statutes of the United States relating to the District of Columbia, and provides in substance that “ Every person convicted of * * * an assault with intent to kill shall be sentenced * * * not less than two nor more than eight years.” An assault is defined to be “An unlawful offer or attempt with force or violence to do a corporeal hurt to another.” 1 Bouver, Law Diet.
Again: it is said to be “An attempt or offer to beat another without touching him, * * * an unlawful setting upon one’s person.” 3 Bl. Com., 120.
It will be observed that each of these indictments charges that the assault was “feloniously” made with intent to “ feloniously kill.” A felonious act is one which is “ criminal, cruel, malignant, malicious.” A felonious assault therefore is a criminal, malicious assault. An act, an assault, “ feloniously ” committed is one which is committed “ in a felonious manner.”
*79 Homicide is declared to be justifiable, excusable or felonious. 4 Bl. Com., 176.
Every homicide which is neither justifiable nor excusable must of necessity be “ felonious.” Every felonious homicide must be and is either murder or manslaughter. 4 Bl. Com., 190.
Murder and manslaughter are each and both felonies. 2 Bish. Crim. Law., 617.
Therefore every assault feloniously committed with intent to “ feloniously kill,” must of necessity be and is a criminal assault, with intent to commit a felony, either murder or manslaughter. An assault with intent to commit either of these crimes is an assault with intent to commit a felony, and is indictable. 2 Bish. Cr. Law, 629 et seq.
All statutes providing for the punishment of assaults with intent to commit crime contemplate the complete commission of the one offense, the assault, the misdemeanor, with the intent to commit the other complete crime, which would be a felony. Wilson vs. People, 24 Mich., 410.
In the Michigan case just cited it was held that a verdict convicting a defendant of assault with intent to kill amounted to no more than a finding that he was guilty of a mere assault. But that decision was based upon the statute of the State, which provided that “If any person shall assault another with intent to commit the crime of murder,” he shall be punished, etc. The charge of “ an assault with intent to kill” and probably the charge of “ an assault with intent to feloniously kill ” would fail to allege the offense contemplated by that statute. Where, however, the statute provides for the punishment of any person who shall be convicted of assault with intent to kill, an indictment charging a felonious assault with intent to feloniously kill, would be sufficient, and would be in effect what our statute manifestly intends : a charge of an assault with intent to commit a felonious homicide, either man *80 slaughter or murder. State vs. Throckmorton, 53 Ind., 354.
These indictments each and both charge an assault, a felonious assault, with intent to commit a felonious homicide, to wit: murder or manslaughter. It must, therefore, be held that the indictments are sufficient, and that they do each charge an indictable offense known to the law, and at least an assault with intent to commit the crime of manslaughter.
In regard to the question which arises in relation to the age of the juror, David Fisher, it seems that Mr. Fisher made his first appearance as a juror on the 5th day of April last, and was at that time sworn and interrogated by the presiding judge as to his qualifications; that he then stated upon oath that he was under sixty-five years of age. From the affidavits and from the showing submitted to the trial justice it appears plain that this juror was born on the 17th day of March in the year 1820, and that he was therefore sixty-seven years- and some days old when he was so returned.
It is also, we think, quite manifest from the showing that the juror knew perfectly well that his birthday was in March instead of in May or June, as he afterwards stated in his affidavit, and that lie not only incorrectly stated his age, but purposely did so to bring himself within the age of sixty-five years. In other words, had he been honestly mistaken as to the year of his birth, and had he honestly believed that he was bom in the year .1822, as he afterwards deposed, it is manifest still that he well understood that the anniversary of his birth occurred not in May or June, but actually in March, so that had he been bom in 1822 he was, when so returned, more than sixty-five years of age, and must have so understood it.
It is also undisputed that neither the defendant nor his counsel was aware of the fact of the age of this juror until after the rendition of the verdict.
*81 Section 872 of the Revised Statutes relating to the District of Columbia declares that “No person shall be competent to act as a juror unless he is a citizen of the United States, a resident of the District, over twenty-one and under sixty-five years of age.” An infant, an alien, and a man over the age of sixty-five, are all by this statute placed upon the same footing, and are incompetent to serve as jurors.
As to the effect of such incompetency upon a verdict in a criminal case in which the defendant was ignorant of such incompetency until after verdict, there seems to be a wholly irreconcilable difference in the authorities. In Thompson & Merriam on Juries (sec. 302) it is declared that:
“A considerable body of cases in this country seems to stand as authority for the proposition that * * * where * * * the objection affecting the juror’s competency was not discovered until after verdict, the * *' * party has the same right to a new trial which he had to exclude * * * upon challenge.”
It is then added that “ The foregoing, however, is contradicted by an overwhelming weight of authority,” and that the rule is really otherwise, and applies to criminal as well as civil cases.
In Indiana one Croy was indicted, tried and convicted for malicious trespass. A motion for a new trial, based upon the ground that one of the jurors was not a householder, was made and overruled. The ruling was excepted to, error assigned, and the question reviewed by the Supreme Court. The statute required that “Petit jurors of the Cir- . cuit Court shall be householders of the county.” It was held by the Supreme Court that, notwithstanding the juror was incompetent, it was too late after verdict to raise the question, and that the conviction must stand. Croy vs. State, 32 Ind., 384.
Again, in the same State, one Kingen was indicted for murder. A petit jury was selected and sworn, but before the case was stated by the prosecutor, and before any evi *82 dence was offered, it was discovered that one of the jurors was neither householder nor freeholder. Thereupon -the Court, without the consent of the defendant, discharged such juror. Another one was summoned in his place, and the jury were again sworn; whereupon the defendant moved to be discharged, upon the ground that he had once been in jeopardy. The motion was denied, the trial proceeded, and the defendant was convicted of manslaughter. The case was reviewed by the Supreme Court, that tribunal holding that the verdict of the first jury, had the trial proceeded, would have been valid. Kingen vs. State, 46 Ind., 132.
The same question was once more before the Supreme Court of Indiana in Gillooley vs. State, 58 Ind., 182. Gillooley had been convicted of murder. Motion for a new trial was made, based on the ground that one of the jurors was neither freeholder nor householder. The motion was denied and the case removed to the Supreme Court, where the conviction was affirmed on the authority of the case in 46 Indiana. The Court says: “The objection that he (the juror) was not a freeholder nor householder was waived by failing to question him as to his qualifications.”
In North Carolina one White was convicted of larceny. He moved for new trial, on the ground that one of the petit jury was a non-resident of the county, and that such fact was not known to him until after the verdict. The motion was denied, exception taken, and the case removed to the Supreme Court. It was held that the fact of such non-residence was good “ cause of challenge,” but that “ The fact that one incompetent juror was permitted by the defendant to try his case did not vitiate the verdict.” State vs. White, 68 N. C., 158.
In South Carolina one Quarrel was convicted of murder. Motion was made in his behalf for a new trial, upon the ground that one of the jurors was an alien, which fact was unknown to the defendant until after conviction. The motion was denied and the case reviewed by the Supreme *83 Court. It was held that it was too late after verdict to raise the question, and that the defendant must be held to have consented to be so tried. The conviction was affirmed. 2 Bay (S. C.), 150.
In Georgia one Costly was convicted of murder. Motion for a new trial was filed upon the ground that a juror was a non-resident of the county. Motion was denied and the cause taken to the Supreme Court. That tribunal held that “If disqualified jurors aré taken and not objected to * '* * then verdicts are as binding and valid as if they had possessed the proper * * * qualifications.” Costly vs. State, 19 Ga., 614.
In Illinois one Chase was convicted of murder, and moved for a new trial upon the ground that a juror was an alien. The statute reads as follows:
“All free, white, male, taxable inhabitants * * * being natural born citizens of the United States or naturalized * * * between the ages of twenty-one and sixty years * * * shall be considered and deemed competent persons * * * to serve on all * * * petit juries in and for the bodies of their counties respectively.”
The motion was denied and the case reviewed. The Supreme Court held that if the juror was actually disqualified, the fact, even that defendant knew it and accepted the juror with such knowledge, would not render him competent. They declare, however, that alienage is not a disqualification, although an alien might claim his exemption; but that if he did not so claim it there was “ no reason why they (aliens) should not serve as jurors.” Chase vs. People, 40 Ill., 352.
In Massachusetts two defendants were tried in a municipal court of Boston, on a charge of assaulting an officer and aiding a prisoner to escape. The offense was a misdemeanor.- During the progress of the trial one of the jurors was excused by the consent of the defendants, which consent was duly entered and recorded. The trial then pro *84 ceeded before the remaining eleven. Defendants were convicted. A motion in arrest of judgment was made .and denied, exception taken and the case removed to the Supreme .Court of the State. That Court held that the defendants might waive constitutional right to trial by twelve, and having expressly so ivaived, with the consent of the trial judge, and having in effect stipulated of record that they should not except to the irregularity, they were precluded from taking the exception, and the verdict should stand. Commonwealth vs. Dailey, 12 Cush., 80.
In Kentucky a defendant was convicted and fined $100 for betting on an election. On the trial a juror was withdrawn by consent, and the trial proceeded before the remaining eleven. On error to the Supreme Court it was held that the agreement to waive the twelfth juror was valid; that the only penalty under the statute was a fine of $100, and that, therefore, in proceedings for misdemeanor where the penalty imposed was merely a fine, an agreement by the defendant to be tried by a jury constituted of a less number than twelve persons was not inconsistent with any rule of law or with public policy. Murphy vs. Commonwealth, 1 Metc. (Ky.), 365.
Again, in Tyra vs. Commonwealth, 2 Metc. (Ky.), 2, it was held that a defendant who was charged with felony but convicted of a misdemeanor might consent to be tried by eleven jurors, and that such conviction would not be set aside.
In England one Sutton, together with other defendants, was convicted of conspiracy. Motion for a new trial, based upon the ground that one of the jurors was an alien, was made in his behalf. The statute declared that “ If any man shall be returned as a juror, * * * but shall not be qualified * * * the want of such qualification shall be good cause for challenge.” The motion was denied. 15 Eng. C. L., 417.
In Tennessee one Calhoun was convicted of murder. He *85 moved for a new trial upon the ground that one juror was not a freeholder of the county. The motion was denied, exception taken and the case removed. The Supreme Court affirmed the conviction, simply saying that it was no cause for new trial, and that it had been so repeatedly held in that State. The cases cited in the opinion are those of McClure vs. State, 1 Yerg., 206, which holds that the discovery after verdict that one of the jurors was an atheist was not cause for vacating the verdict; and the case of Gillespie vs. State, 8 Yerg., 508, which holds that the fact that two of the petit jurors were on the grand jury that found the indictment was not sufficient cause to invalidate the verdict. Calhoun vs. State, 23 Tenn., 477.
In Wisconsin one Vogel was convicted of arson. He moved for new trial and' the case was certified to the Supreme Court for its opinion on a question of law. The question was whether the fact that one of the jurors was an alien was sufficient cause for a new trial. Nothing is said in the context as to whether or not defendant knew of such alienage before verdict, although the head note assumes that ■ he did not know it. The Supreme Court says that while in capital cases the prisoner is held not to waive anything, such is not the rule in other cases, civil or criminal; and if the defendant, in any cases not capital, fails to question every person called as a juror, as to his qualifications, he must be presumed to have waived all objections which do not tend to impeach the justice and the fairness of the verdict. The Court concludes by directing that the motion be denied. State vs. Vogel, 22 Wis., 471.
In Presbury vs. Commonwealth, 9 Dana (Ky.), 205, it was held in a case where the defendant has been convicted of assault and battery that alienage (of the juror), although cause for challenge, “is-not a ground for a new trial, although it was unknown to the party moving for it until after the verdict was rendered.” The Court continued: “In cases properly termed capital, where life or liberty is involved, it *86 might possibly be proper to grant a new trial on the ground of alienage alone in one of the jurors; but we do not intend to be understood as expressing an opinion for or against it in such cases; but feel clear that it ought not to be done upon such ground alone in civil cases or in cases of prosecution for mere misdemeanors.”
In opposition to the doctrine of the foregoing cases the authorities are also numerous:
In Missouri one Mansfield was indicted for burglary. A jury of twelve men was impaneled and sworn: The next morning, before the trial commenced, one juror was excused and the trial proceeded with the defendant’s consent before the remaining eleven. The defendant was convicted. He moved for a new trial. The motion was denied and the case removed. The Supreme Court held that in cases which “ can only be proceeded with by indictment * * * and can only be tried by a petit jury, the jury must be composed of twelve persons.” The conviction'was set aside. State vs. Mansfield, 41 Mo., 470.
In Illinois one Stone was convicted of murder. During the trial it was discovered that one of the jurors was an alien, whereupon the Court discharged him. Another was summoned and the trial began again. The defendant was convicted, and the case went to the Supreme Court where the conviction was held correct. The Court said that the verdict, had the trial proceeded as it first began and resulted in a verdict of guilty, must have been set aside instanter on application of defendant. Stone vs. People, 2 Scam., 326.
In Wisconsin it is provided by statute that “All persons who are citizens of the United States and qualified electors of the State shall be liable to be drawn as jurors.” One Shumaker was indicted and tried for murder. He was convicted of manslaughter. After the verdict it was ascertained that a juror was of foreign birth, had declared his intention to become a citizen, but had not been actually naturalized. Motion for a new trial was based upon this *87 ground. The motion was denied and the case went to the Supreme Court, where the conviction was reversed. The Court says: “Although the statute does not say that none but citizens of the United States and electors shall be competent jurors, yet in a case like the present, where the accused is presumed to stand upon all his rights and waive nothing, we are disposed to give it that .construction. Shumaker vs. State, 5 Wis., 328.
In Keenan vs. State, 8 Wis., 27, it was declared that the conviction could not be reversed upon the alleged ground that one of the jurors was an alien, for the reason that it had not been satisfactorily shown to be true; that the affidavits failed to satisfactorily establish the truth of the averment. The opinion, however, assumed that the judgment would be reversed if the fact of alienage had been so shown.
In Hilliard on New Trials, sec. 3, chap. 9, it is declared “The presumption is that a juror properly summoned is competent; and a verdict will not bo set aside, unless his incom/pentency be satisfactorily proven.” After discussing the question the author declares (sec. 22, chap. 9) that “ In general the point must be held to depend upon the statute laws of each State.”
In Connecticut one Babcock was convicted of murder. Motion in arrest of judgment was made on the ground that one juror was not a freeholder. The question was reserved for the nine judges of the Supreme Court of Errors. The judges unanimously directed that the “Judgment be arrested and a new trial had, for the reason that one of the jurors was not a freeholder, and that by the statute of the State it was indispensably requisite that jurors should be freeholders.” State vs. Babcock, 1 Conn., 401.
In Iowa one Groome.was indicted, tried and convicted for seduction. A motion in arrest of judgment and for new trial was made on the ground that one of the jurors was not an elector of the State. The statute makes all electors competent jurors. The Supreme Court held that it *88 was the duty of the State to place twelve legal jurors in the box, that it was not the duty of the defendant to inquire whether or not the jurors were qualified, and that had defendant known at the time the jury was sworn that any of them were not qualified and had not objected, he would have waived his right so to do thereafter. The verdict was set aside and a new trial granted. State vs. Groome, 10 Iowa, 308.
In New York one Cancemi was tried for murder. During the trial one- of the jurors was excused upon the stipulation signed in open court by the defendant, by his counsel and by the counsel for the prosecution. The stipulation also provided that the record should show the case tried by a jury of twelve. The Court of Appeals held that the defendant was not bound by the stipulation, and that he was incompetent to make it, and the conviction was set aside. Cancemi vs. People, 18 N. Y., 128.
In Hill vs. People, 16 Mich., 358, it was held that a conviction for murder by twelve men, one of whom was an alien and therefore incompetent, but whose incompetency was unknown to defendant until after verdict, was a nullity. The Court declared that it was the duty of the trial Court to see that the defendant had a constitutional jury, however negligent he may have been in raising the objection, and that even if the defendant had actually consented, his “ consent should not be allowed to give jurisdiction.”
In Cooley’s Constitutional Limitations, at page 319, it is declared that a jury “is a body of twelve men;” “that any less than this number of twelve would not be a common law jury, and not such a jury as the Constitution guarantees accused parties; ” that “ The infirmity in case of a trial by a jury of less than twelve by consent would be that the tribunal would be-one unknown to the law, created by the mere voluntary act of the parties, and an attempt to submit to a species of arbitration the question whether the accused has been guilty of an offense against the State.”
The question has been many times exhaustively discussed *89 in cases where the precise question was not involved, as well as in civil cases. Green vs. State, 59 Md., 123; Johns vs. Hodges, 60 Md., 215; Cowles vs. Buckman, 6 Iowa, 161; Wassum vs. Feeney, 121 Mass., 93; U. S. vs. Baker, 3 Ben., 68; Munroe vs. Brigham, 19 Pick., 368; Briggs vs. Town of Georgia, 15 Vt., 72; Queen vs. Hepburn, 7 Cranch, 297; U. S. vs. Gale, 109 U. S., 65; Hollingsworth vs. Duane, 4 Dall., 353 ; Brewer vs. Jacobs, 22 Fed. Rep., 231; State vs. Patrick, 3 Jones (N. C.), 443; State vs. Davis, 80 N. C., 412.
We have no difficulty in reaching the conclusion that in all civil cases a verdict should not be disturbed for the merely technical reason that one of the jurors was incompetent, no matter for what cause, unless the moving party was injured thereby.
We do not feel called upon to express our opinion as to the effect of the presence on the jury of one incompetent person, with the knowledge and consent of the defendant in a criminal case, nor of the validity of a trial by eleven jurors; nor indeed need we, for the purposes of this case, determine whether the bare fact of the presence of one incompetent man without the knowledge of the defendant in a criminal case would be cause for setting aside the verdict.
In the case under consideration we are asked to sustain a verdict convicting the defendant of a serious crime, notwithstanding the plain incompetency of one of the jurors, and notwithstanding the fact that such juror knew of his own incompetency, was inquired of by the Court upon this subject, and fraudulently concealed the fact.
Suppose, instead of a man above the age of sixty-five years, an infant or a female had secured a place in the jury box under the same circumstances. Would there be any doubt that the verdict should be vacated and a new trial granted? We think not.

We do not feel called upon to discuss any other question presented on the argument. We are satisfied that the verdict in this case should not be permitted to stand, but that the 'same should be set aside and a new trial granted. 12