## JOSEPH YOUNG AND JOSEPH BUSH ALIAS JOSEPH BARRETT *vs.* THE STATE OF MARYLAND.

*Criminal Law—Disqualification of Juror Because He had Sat on Coroner's Jury—Time and Mode of Making Objection to Qualification of Juror—Waiver of Objection—Admissibility of Confession—Deposition of Absent Witness in Criminal Case.*

The proper method of objecting that a juror in a criminal case is disqualified is by a challenge to the polls for cause and not by a challenge to the array and to discharge the panel.

The objection that a juror in a criminal case is disqualified must be made by a challenge for cause before the juror is sworn, in all cases where the party objecting knew, or by the exercise of reasonable diligence could have known of the disqualification.   If the challenge is not then made, the objection is deemed to be waived.

On a trial for murder, after the jury was sworn and the evidence begun, the prisoner's counsel moved to discharge the panel upon the ground that one of the jurors had been foreman of the coroner's

jury which held the inquest on the homicide, and that they did not
know this fact when the jury was sworn. *Held,* that since the
prisoner or his counsel could have had knowledge of this alleged dis-
qualification before the jury was sworn, and did not then challenge for
cause, it was too late to make the objection after the jury was sworn.

A voluntary confession made to a peace officer by a person, without
any inducement or threat, is admissible in evidence although he was
then in custody charged with the offence.

No commission can be issued to take the testimony of an absent wit-
ness in a criminal case, since there is no statute authorizing the de-
positions of such witnesses to be read in evidence.

Appeal from the Circuit Court for Harford County
(WATTERS, J.)

The cause was argued before McSHERRY, C. J., FOWLER,
PAGE, PEARCE and SCHMUCKER, JJ.

*Harold Scarboro* and *Gilbert S. Hawkins,* for the appel-
lants.

Counsel for the traversers called the attention of the
Court to the fact that Wilson had served as a member of
the coroner's jury as soon as they discovered it. The jury
should thereupon have been discharged and a new one em-
panelled. *Stewart* v. *State,* 15 Ohio, 155 ; *O'Brian* v. *Com.*
9 Bush. (Ky.) 333 ; *Zimmerman* v. *State,* 56 Md. 536.

It is clear that Wilson was not a qualified juror. *Dunn*
v. *State,* 7 Texas, App. 600; *Jacobs* v. *State,* 9 Texas, App.
278; *Greenwood* v. *State,* 34 Texas 334; *Plow Co.* v. *Deutch,*
16 Neb. 384; *Dugle* v. *State,* 100 Ind. 259; 2 *Graham &*
*Waterman on New Trials,* 374, 379.

The State undertook to prove by William J. Forsythe,
sheriff of Harford county, and one Alonzo Bond, who was
present with him, that the appellants had admitted they
shot " once or twice." The sheriff stated, when objection
was made to the admission of this evidence, that he had
held out no inducements to the appellants, but admitted
that appellants appeared " very much excited and fright-
ened." These men were called out in the dead of night,

confronted by an officer of the law, and charged with a most serious crime, and we respectfully contend that where " a confession or admission is made through fear, it is not admissible in evidence." *Biscoe* v. *The State*, 67 Md. 6. The alleged admissions of appellants as to their having shot " once or twice," was the only apparently credible *direct* evidence produced on the part of the State to immediately connect these appellants with the shooting, and it was urged by counsel for appellee that it was a *voluntary admission*, and therefore admissible, but, we submit, from the nature of the evidence as set forth in the Record, and from the fact that the appellants " were very much excited and frightened," that it should have been excluded from the jury. 3 *Am. and E. Ency. of Law*, 439, &c.

The point raised by the fourth bill of exceptions is also one which we are unable to find has been directly passed upon by this Court, but we contend that where, as was shown by all of the State's witnesses, that the absent witness, Mollie Fleming, sat in the same car seat with the appellant Young, from Fallston to Belair, at which latter place the said murder was alleged to have been committed, and had also continued to remain with him in the same seat until they had reached the end of their journey upon the cars, had then walked with the said Young to their home and remained in the same house with him until the moment of the arrest, that having necessarily seen his action and heard his language and remarks before and during the alleged murder, that she was, as a matter of fact, a most important witness to the appellant Young, and that the refusal by the Court to grant the petition of the appellants, and thereby deny them the privilege of establishing their innocence in this Court, was a grave error on the part of the Court, although, as we have stated, we cannot find any Maryland cases bearing directly upon the subject, yet it was held in *Newton* v. *State*, 21 Florida 53: " To avoid the necessity of issuing a commission to examine a witness, it is not sufficient that the prosecutor offers to admit that

the witnesses would testify to the facts stated in the affidavit, but the commission must issue," and " such testimony taken under a commission is admissible in evidence." See also *State* v. *McO' Blenis,* 24 Mo. 402; *State* v. *Carlisle,* 57 Mo. 105; *State* v. *Able,* 65 Mo. 357; I *Bishop's Criminal Procedure,* sec. 1090, etc. And it seems to us that, after having used due process of law to secure the attendance of this witness, it was a great injustice, and worked great hardship to the appellants, to be thus deprived of the strongest testimony which they would have been able to produce to prove their innocence.

*George R. Gaither, Jr., Attorney-General,* and *Walter W. Preston,* for the appellee.

There is no statutory disqualification to a juror on account of his having been of the jury of inquest. A member of the grand jury which found the indictment is disqualified by 25 *Edward* 3, Statute 5, ch. 3; but even here, with the statutory prohibition, " a defendant not taking this objection before the juror is sworn, knowing it, or perhaps even having the means of ascertaining it, waives it ; so that it is not usually, but may be available, for instance, on a motion for a new trial. *Bishop on Criminal Procedure,* sec. 911. The only reported case of a coroner's juror who was called as a petit juror to him indicted for the crime is *Young* v. *Slaughterford,* 11 Mod. 228, in the reign of Queen Anne, and in that case the juror was objected to *when he was sworn on his voir dire,* and the Court sustained the objection at that stage.

The trial Judge might rightly grant a new trial if he could see that having signed the verdict at the coroner's inquest in the particular case would be likely to interfere with the juror rendering a fair and impartial verdict after hearing the evidence, but it is a question for the discretion of the trial Judge on a motion for a new trial, and no appeal lies from an order of Court granting or refusing a new trial. *Busey* v. *State,* 85 Md. 115. The disqualification

of the juror Wilson was urged with great force on the application for a new trial, and the motion was overruled by the Court.

It is a general rule that if a party does not take a challenge at the proper time he cannot avail himself of the defect afterwards. And even if it be conceded they were ignorant of the fact, as stated, it would be immaterial, first, because they might have known it, (*Johns* v. *Hodges,* 60 Md.); and secondly, the disqualification, if such it was, might have been a good ground of challenge, but did not render Wilson incompetent to act as a juror, and was not such a disqualification as is sufficient to set aside a verdict. *Busey* v. *State, supra; Green* v. *State,* 59 Md. 123; *Kohl* v. *Lehlback,* 160 U. S. 300.

2. With reference to the second exception, where objection is made to the testimony of William J. Forsythe, the sheriff of Harford County, there is nothing in his testimony to show that the prisoner's statements were brought out by any inducement or threat; on the contrary, the sheriff states in his testimony that no inducement whatever was held out by him; and it is evident from the testimony in the exception that such was the fact. The mere fact that a person was under arrest or in the presence of the officer who apprehended him, does not render his confession inadmissible. *Pierce* v. *U. S.,* 160 U. S. 355; 1 *Greenleaf's evidence,* sec. 229; *Ross* v. *State of Maryland,* 67 Md. 286; *Rogers* v. *State,* 89 Md. 424.

3. The Court committed no error in refusing to issue a commission to take the testimony of Mollie Fleming. Under the Constitution of Maryland, a person accused of a crime must be confronted by his witnesses, and we have never heard of a commission to take, if indeed it is ever permissible in any kind of a criminal case, testimony in a capital case. Mollie Fleming was one of a large number of persons who were in the car from which Young and Bush shot and killed Lee, and when the attachment was issued, the sheriff made the return of "sick." In the affi-

davit concerning her, there is nothing to show in what respect her evidence would benefit the prisoners, and there is no reason to suppose that it would differ from the other persons present who testified. Questions of this kind are more properly for the presiding Judge on a motion for a new trial, and this was brought to the attention of the Court at the hearing of the motion for a new trial, and the application was denied. From an order of Court refusing to grant a new trial no appeal lies.

PAGE, J., delivered the opinion of the Court.

The appellants were indicted for murder in the Circuit Court of Harford County.

At the trial the several jurors, having been sworn on their *voir dire*, declared they had not formed or expressed any opinion as to the guilt or innocence of the prisoners. After the whole panel had been sworn, and the State had produced a part of its evidence, " the counsel for the defense suggested to the Court, that it had just come to *their* knowledge that the eleventh juror on the panel, J. Pearl Wilson, a talesman summoned by the sheriff in this case (who had also summoned the coroner's jury of inquest), had served as foreman" of that jury and had " rendered a verdict over his hand and seal as foreman as aforesaid." The finding of the coroner's jury thus referred to, was that the deceased " came to his death from the effects of a pistol-shot wound   *   *   *   and we believe from the evidence that Joseph Young and Joseph Bush were implicated in the shooting." It appears that the coroner swore nineteen witnesses, and their testimony is fully set out in the record. The counsel for the prisoners thereupon claiming that the juror Wilson, having heard such evidence and rendered such a verdict, " must necessarily be biased and disqualified, challenged the *array* and moved that the Court discharge the panel." The Court overruled the challenge and the motion to discharge the panel, and permitted the trial to proceed, whereupon the defendants excepted.

It must be observed that the challenge is to the *array* and to discharge the panel. Such a challenge . may be raised only when there is some objection affecting the constitution of the whole panel. 3 *Blackstone Com.*, 359; 1 *Bishop on Crim. Pro.* sec. 744; 12 *Ency. Pl. & Prac.*, page 418 and authorities there cited.

The proper method of objecting to the qualifications of the juror in this case was by a challenge to the polls for cause. Such a challenge may be made properly when there is some disqualification attaching to a particular juror, and not to the constitution of the whole panel. 1 *Bishop Crim. Pro. (supra.)* If, therefore, this case be regarded according to the strict letter of the exception, the questions argued by the respective counsel at the hearing, would not be before us.

Let it, however, be taken as a challenge to the poll for cause. In respect to this, the general practice that prevails here and in most, if not all of the Courts having our system of jurisprudence, is that challenges for cause must be made before the juror is sworn ; and that rule, is without exception, in all cases where the party objecting to the qualifications of the juror had knowledge at that time of the circumstances tending to disqualify ; or could have known of them by the exercise of proper diligence in making inquiries or otherwise. And if with such knowledge, express or implied, he fails to make his challenge, before the juror is sworn, it must be deemed to have been waived, no matter how good his cause of challenge may be. *Reg.* v. *Frost*, 9 C. & P. 129 ; *Johns* v. *Hodges*, 60 Md. 222, 223; *Busey* v. *State*, 85 Md. 118; *Com., &c.*, v. *Knapp*, 10 Pick, 477; *Gillooly* v. *State*, 58 Ind. 182; 1 *Bishop on Crim. Procedure*, sec. 932. (4th ed.); *Green* v. *State*, 59 Md. 123; 12 *Ency. P. & Prac.*, title Jury, page 437.

To enable the Court to entertain an objection to the qualifications of a juror, after he has been empanelled and sworn, and the trial has actually been begun by the production of evidence, it, at least, must be proven that party making the

objection at the proper time for tendering challenges, did
not actually know, and might not have known, the particu-
lar circumstances upon which rests the alleged disqualifica-
tion.  *Thompson & Merriam on Juries,* sec. 275, note 2;
*Johns* v. *Hodges, supra.*

In this case we have not adequate proof that the defend-
ants were not fully aware of the fact that Wilson had served
on the coroner's jury.   They were not present at the hear-
ing before the jury, it is true, but their counsel were.   The
latter witnessed the impanelling of the jury and must have
observed the foreman, who occupied the most conspicuous
position of all the jurors.   There certainly is not the slight-
est reason why they might not have known that he was one
of the jurors from their own recollection; and if that was
not sufficient, nothing prevented an examination of the list
of jurors before the coroner, or an actual inquiry of Wilson
when he was on his *voir dire.*   The exceptions do show
that it was after the trial had begun that the knowledge of
the alleged disqualification first came to their attorneys,
but there is nothing in the record as to when it first came
to the knowledge of the defendants.   Nor can ignorance
of the fact be imputed to them as a presumption of law or
of fact.   Their counsel having been present at the hearing
before the coroner, the presumption would rather tend to
prove that when Wilson was called as a juror, they knew of
his service on the coroner's jury.   And whether this be
correct or not, it cannot be questioned that even a reason-
able diligence in making proper inquiry would have en-
abled them to obtain possession of all the facts.   If his
presence on the jury resulted detrimentally to justice, the
Court after the verdict, was fully empowered to grant a new
trial; but we approve the rulings as set forth in this excep-
tion, as founded upon the rules of proper practice and most
conducive to the attainment of justice.

The second and third exceptions present a question of
evidence.   The sheriff, who had been sworn as a witness
for the State, testified that having been informed of the hom-

icide, he went to Fleming's house to look for Young, one of the defendants, that he asked for Young, who thereupon came down "about half dressed" and that witness said, "Joe you don't know what I am up here for, do you;" and he said, "Yes sir, I do ; its about that shooting scrape in Bel Air," that he asked for his pistol and he said he didn't have any; that witness said, "you could not shoot a man without having a pistol;" that Mollie Fleming went into the house and got the pistol, and witness "asked him if it was the pistol he did the shooting with and he said it was;" that Young said, he "had shot once or twice," &c. On cross-examination witness said that " Young seemed to be very much excited and so was Bush." During the giving of this evidence, the counsel for the prisoners several times objected to the admission of Young's answers, and after the cross-examination, excepted generally to the sheriff's testimony, the Court, however, overruled all the objections and admitted it.

The fact that a party is in custody is not enough of itself to render his confessions inadmissible, provided they are not extorted by inducements or threats. *Pierce & Pierce* v. *U. S.* 160 U. S., 355; *Rogers* v. *State*, 89 Md. 424; *Ross* v. *State*, 67 Md. 288.

In this case the confession was freely and voluntarily made. No threat was made by the officer and no hope or promise of benefit held out to him. It was "left to the prisoner as a matter of perfect indifference whether he should open his mouth or not." This, said POLLOCK, C. B., in *Regina* v. *Baldry*, 12 E. Law & E. R. 597, is the distinction between those cases where the confession is held inadmisible and those where it is not. In *Biscoe's case*, 67 Md. 10, on which the appellants rely, there was an inducement which the Court thought was of the "strongest kind ;" the confession was therefore rejected.

After the State had closed its case, and some evidence had been given on the part of the defendant, an attachment issued for Mollie Fleming an absent witness, and upon the

return thereof it appeared that the witness was ill and unable to attend. Thereupon the defendants, by their attorneys, prayed the Court "to pass an order directing that a commission issue at once to take the testimony of said Mollie Fleming." The refusal of the Court to so order, is the ground of the defendant's fourth exception.

In some of the States of the Union, there are statutes providing for commissions to take the testimony of absent witnesses in criminal cases. In Maryland there are provisions for taking the depositions of absent witnesses in civil cases. But these do not apply in criminal cases, and in such there is no statute or practice in any of the Courts permitting depositions taken by a commissioner to be read as evidence. There is in this State no inherent power to direct the taking of depositions to be used as evidence. Whatever power the Courts of law have, is conferred by statute, the provisions of which must be strictly followed. In *Bell* v. *Morrison*, 1 Peters 355, where a deposition was excluded by the lower Court, Mr. Justice Story in speaking for the Court said that "this is a point altogether dependent upon the construction of the Act of Congress, &c.; the authority to take testimony in this manner being in derogation of the rules of the common law, has always been construed strictly," &c. So in *Jackson* v. *Hobby*, 20 Johns Reps. 362, the Court refers to the statute as being "an innovation on the common law rules of evidence." In *Anonymous*, 2 Chitty, 199, a rule was moved to show cause why the lessor in ejectment should not be permitted to examine a witness, upon interrogatories on the ground that he was too ill to attend. The Court in refusing the motion said "We cannot grant it. You must apply to a Court of Equity or get them to admit the facts." 2 *Tidd's Practice*, 860 (marg.); 6 *Enc. of Pleading & Practice*, page 478 and 479; 1 *Greenleaf on Ev.*, secs. 320 to 323.

Finding no error the judgment will be affirmed.

*Judgment affirmed.*

(Decided January 11th, 1900).