## STATE OF MARYLAND *vs.* EDWARD McNAY, SR.

*Duplicity in Criminal Pleading—Validity of Local Law Requiring Jurors to be Selected by Jury Commissioners—Mode of Selecting Jurors—Statute Requiring Jurors to be Able to Read and Write is Directory Only—Plea in Abatement to Indictment Alleging Illegality of Grand Jury.*

A plea is bad for duplicity which alleges two or more distinct grounds of defense to one charge, when one of the defenses alone would be effectual, because such plea tends to make several issues in respect of a single charge.

At common law the proper mode of taking advantage of duplicity in pleading is by demurrer; and this rule is not changed by the language of Code, Art. 75, sec. 10.

A plea in abatement to an indictment alleged it to be invalid, first, because the grand jury which found the indictment did not consist of twenty-three lawful jurors; second, because the persons from whom the grand jury was drawn were not legally selected; third, because the statute under which the jury was drawn was unconstitutional. *Held*, upon demurrer, that this plea is bad for duplicity, because the proof of anyone of the matters pleaded would be sufficient to show that the grand jury was not a lawfully constituted body.

The selection of jurors is not an essentially judicial function, and the Act of 1904, ch. 560, which vested the power of selecting jurors in Prince George's County in the hands of Jury Commissioners appointed by the Governor, is not unconstitutional as conferring upon them the exercise of judicial power.

Under the law relating to jurors they may be selected either from names on the tax lists or from names upon the poll-books, and the officers drawing juries may request other persons to furnish the names of proper individuals from whom they make a selection. A plea in abatement to an indictment, upon the ground that the persons from whom the grand jury was drawn were not legally selected, alleged that the Jury Commissioners in selecting the list of names, under the Act of 1904, ch. 560, from which the grand jury was drawn, took the names in part from lists furnished them by persons in different districts of the county, and that the persons sworn on the grand jury were not qualified. *Held*, upon demurrer, that this plea is bad because it does not state affirmatively that the names furnished by other persons were voluntarily suggested by them without a request from the Jury Commissioners and were not approved by them after examination, and that the names of the jurors were not upon the tax-lists or poll-books.

The local Act of 1904, ch. 560, provides that the persons selected as jurors shall all be taxpayers and able to read and write the English language. *Held*, that the provision requiring the jurors to be able to read and write is directory only, and an indictment found by a grand jury one of whose members was unable to read and write is not for that reason invalid.

A plea in abatement to an indictment alleged that the grand jury finding it did not consist of twenty-three men as is required by law. Upon the list of the grand jurors appended to the plea and certified by the Clerk of Court, the word "Excused" followed the name of a person who had been sworn on the jury. *Held*, that since the plea does not disclose whether that juror had been excused before or after the indictment was found the plea is not a bar to the indictment.

Appeal from the Circuit Court for Prince George's County.

The cause was argued before McSherry, C. J., Fowler, Page, Boyd, Pearce, Schmucker and Jones, JJ.

*William S. Bryan, Jr., Attorney-General* (with whom was *M. H. Magruder, State's Attorney for Prince George's County,* on the brief), for the appellant.

*J. K. Roberts* and *Geo. B. Merrick,* for the appellee, submitted the case on their brief.

Pearce, J., delivered the opinion of the Court.

The appellee was indicted in the Circuit Court for Prince George's County for selling liquor on Sunday. To this indictment he filed a plea in abatement alleging "that the said indictment nor presentment were not made, nor found, by a legal or lawful grand inquest, or grand jury of the State of Maryland, in and for Prince George's County," for three distinct reasons stated in the plea; viz, first, because the grand jury did not consist of twenty-three lawful jurors; 2nd, because the two hundred persons from whom the grand jury was drawn were not legally selected; and 3rd, because ch. 560 of the Acts of 1904, under which the jury was drawn by Jury Commissioners appointed by the Governor, is unconstitutional.

To this plea the State filed a general demurrer, which was overruled, and no replication being filed, judgment was given against the State and the indictment was quashed, from which judgment this appeal was taken. The learned Attorney-General argued that this plea was bad for duplicity and as that objection if well founded, must prove fatal, it will be first considered. The authorities agree that all pleadings are double which contain several answers, whatever the class or quality of the answer, whether in abatement or in bar. *Stephen on Pleading,* p. 258; *Gould on Pleading,* ch. 8, sec. 1; 7 *Enc. Pl. and Pr.* 238. Mr. Bishop in his new *Crim. Proc.,* vol. 1, sec. 432, states the rule thus: "Alike in criminal and civil proceedings, duplicity consists in alleging for one single purpose, or

object, two or more distinct grounds of complaint or defense when one alone would be effectual in law.''

Mr. Stephen on p. 242, Tylers Edition, says that the meaning of this rule, with respect to the declaration (or indictment) is, ''that it must not, in support of a single demand'' (or charge), ''allege several distinct matters by anyone of which that demand (or charge) is sufficiently supported; and, with respect to the subsequent pleadings, the meaning is, that none of them is to contain several distinct answers to that which preceded it, and the reason of the rule in each case is, that such pleading tends to several issues in respect of a single claim.''    And again on pp. 245 and 246, he says that although a plea may make distinct answers to such parts of a declaration as relate to different matters of claim or complaint, ''that none of the matters so alleged in a plea in abatement must be such as would alone be a sufficient answer to the whole;'' and he gives the following illustration.    The defendant pleaded in disability of the person of the plaintiff, ten different outlawries adjudged against him, and it was held that the plea was ill for duplicity, because the plaintiff was disabled as well by one outlawry as by the whole ten.''    So here, the grand jury would be as effectually shown to be an unlawfully constituted body, by proof of anyone of the matters pleaded, as of all, assuming all of these matters to be valid objections to its organization.    For this reason we think this plea is bad for duplicity.    At common law it would seem to be clear that demurrer is a proper mode of taking advantage of this defect. 1 *Bishops New Crim. Proc.*, sec. 442.    Mr. Poe in sec. 738 of his work on pleading calls attention to the fact that the Act of 1888 omitted from sec. 10 of Art. 75 the words, ''and that no one plea contain distinct matters of defence or reply,'' which were previously contained therein, and adds that since that Act duplicity is no longer the subject of demurrer in this State.    But in *Stearns* v. *The State*, 81 Md. 341, decided in 1895, an information for violation of the gambling act was held bad *for duplicity*, and we therefore hold this demurrer should have been sustained.

The questions sought to be. raised by this plea, however, are important in themselves, and as affecting the administration of the criminal law in Prince George's County, and we will therefore proceed to state our views in respect to them. The objections made our three in number: First, that the grand jury did not consist of twenty-three lawful jurors. Second, that the two hundred persons from whom they were drawn were not legally selected. Third, that the law requiring the jury to be drawn by Jury Commissioners appointed by the Governor is unconstitutional. These will be considered in their inverse order.

1st. At common law, jurors were selected by the Sheriff in his discretion. *Bacons Abridgement,* Juries B. B.; 12 *Enc. Pl. and Pr.,* 273. *Thompson and Merriam on Juries,* sec. 44. In this State the Sheriff always made the selection of the panel after the common law method, until the Act of 1867, ch. 329. *Cooper* v. *State,* 64 Md. 45. But this large discretion produced such abuses, that the practice has been changed by statutes in most of the United States, the selection being now variously made as stated by *Thompson and Merriam,* sec. 45, by Town Authorities, County Courts, County Commissioners, Selectmen, Supervisors, Special Boards, and Jury Commissioners. It is earnestly contended by the appellee that the Sheriff's office is judicial in its nature, and that in selecting jurors he acted in a judicial capacity, and that the Act of 1904, vesting that power and duty in the hands of Jury Commissioners appointed by the Governor, is "an infringement upon the prerogatives of the judicial power, and for that reason is unconstitutional and void." The Sheriff, however, is in fact the executive officer of the Court, as the clerk is its ministerial officer, and the Court possessed no power, and exercised no control whatever, over the Sheriff in the selection of jurors. Indeed, it was the absence of this power which led to the enactment in the various States of the statutes which revolutionized the practice as we have stated. If the selection of jurors had ever been considered as a judicial function which could not be delegated to executive officers spe-

cially designated for that purpose, the existence of so many statutes in the different States, establishing that practice, would be remarkable in itself, since the Constitutions of almost all the States provide, in varying terms, for the separation of the legislative, executive and judicial powers of government; and it would be still more remarkable that, so far as we are informed by the argument, or have ourselves discovered, none of these statutes have been assailed upon that ground. In addition to the presumption of validity to be drawn from this concurrence of practice and authority, in the States, the practice in the Federal Courts is the same, where the jurors are selected by two *ministerial officers*, the clerk of the Court, and a Jury Commissioner appointed by the Judge. It is not material that one of these is an officer, and the other an appointee of the Court. Neither one can exercise any judicial power, original or delegated, and the Judge can exert no power, nor exercise any control over either, in the performance of this duty.

We cannot perceive any ground upon which the Act of 1904 can be declared to be unconstitutional and void.

2nd. The plea states that "the Jury Commissioners did not select the list of 200 persons in whole as provided by sec. 177A of Art. 17 of the Local Code as amended by the Act of 1904, ch. 560, but that the said list of 200 persons so certified to the Court, from which the list of 48 names was afterwards to be drawn, was selected in part from lists furnished the said Jury Commissioners from persons in the several election districts of said county, *contrary to law*, and that by reason of such unlawful action on the part of said Jury Commissioners, the said list of 48 names, from which said grand jury was drawn, was, in part, made up of incompetent and disqualified persons as jurors; and that certain of such persons, so suggested as jurors, to said Jury Commissioners, and by them so selected as jurors, were chosen on said grand jury, at the first day of the Court, and that thereby the said grand jury, as empannelled and sworn on the said first day of Court was not made up of qualified and competent persons legally qualified as grand jurors."

This plea does not show what lists are referred to as furnished by persons in the several election districts. . There is nothing to show that the names were not upon the tax lists or poll-books, or upon both; and in *Downs* v. *the State*, 78 Md. 131, the selection from either was held a sufficient compliance with the law.    . . .

There is nothing in this plea to show that these names were not furnished to the Jury Commissioners at their request, and if so furnished this does not offend against the law.    In *Avirett's case,* 76 Md. 510, the grand jury was invalidated because the names were not *selected by the Judge* either from the tax-lists or the poll-books.    The precise thing which was denounced as illegal in that case was the "adoption" by the Judge, without any selection by him "of lists privately furnished to him by persons who without his knowledge might be interested in securing the attendance of particular persons to serve upon the jury.".    But it was said in the same opinion, "a Judge, may very properly, and, from the nature of the case must often inform himself by inquiry as to the intelligence, sobriety, and integrity of the persons whose names he may select, but such inquiries are quite different from adopting selections made by some one else."    In the later case of *State* v. *Keating*, 85 Md. 188, the Court in commenting upon the effort of the appellee to stretch the language in the *Avirett case* beyond the application there given it, said, "A Judge, may, during a term of Court be impressed with the demeanor and apparent intelligence of witnesses from localities in the county with which he is not well acquainted, and thinking that such persons would make good jurors, he may make memoranda of their names, and make inquiries about them which may prove satisfactory.    If he then makes a memorandum of their names for the next or some other jury, can it be said that such persons are *thereby* thus disqualified?    *    *    *    If then he has obtained from legitimate sources 48 names selected by himself, after such investigation and inquiry as the law will permit, what is there to prohibit him from having a full list before the day the jury is drawn?    He does not technically,

select the names until the jury is drawn.     *    *    *   So,
what was said in the *Avirett case* in reference to the lists being
privately and previously made, must be taken in connection
with what was then being considered and determined, viz: that
the list itself was illegal; because it contained the names of
those suggested by others, which in the opinion of the Court
was equivalent to being selected by others, and not by the
Judge." Now, if a Judge, reviewing, as careful Judges must,
from time to time the poll-books and tax-lists from which he
is to select jurors, with a view to ascertain the changes
wrought by death, change of residence, or old age, finds that
a score or two of names which he has been accustomed to
place in the box have disappeared from the lists, and desires
to replace them with the names of young men of intelligence,
sobriety, and integrity throughout the county, can there be
any prohibition against his requesting persons from different
localities in whose discretion and good faith he has confidence,
to furnish him with a given number of such names, and if they
are approved by him and found upon the prescribed lists, may
he not properly and wisely select them as qualified jurors,
though the acceptance of names voluntarily suggested, merely
because so suggested, and without investigation and indepen-
dent selection would invalidate the jury; and if a Judge can
make an act upon such inquiry, Jury Commissioners dis-
charging the same duty must have the same power and priv-
ilege.

Moreover this plea is lacking in certainty. In *Bishop's New
Crim. Proc.*, sec. 327, the author speaking of pleas in abate-
ment, says, "This superlative certainty requires the utmost
fullness and particularity of statement, as well as the highest
attainable accuracy and precision; leaving on the one hand
nothing to be supplied by intendment or construction, and on
the other, no supposable special answer not obviated. And
in *State* v. *Scarborough*, 55 Md. 350, it is said, "Every dila-
tory plea must be pleaded with strictness, and be certain to
every intent.     *    *    *   and it is consequently essential that
the facts should be stated out of which the defense arises, or

a negation of the facts presumed from the existence of a record." To meet these exacting requirements so clearly stated by Mr. Bishop, and so emphasized by this Court in *Scarborough case*, this plea should have stated in affirmative language that the names furnished by other persons were voluntarily suggested by them without inquiry or request from the Jury Commissioners, and were not independently selected and approved by them after examination, and were not names upon the tax-lists or poll-books, thus negativing of the supposable special answers that these names were upon the proper lists, and were furnished by request of the commissioners. The second objection therefore cannot avail to invalidate the grand jury.

3rd. The last objection is that the grand jury did not consist of twenty-three lawful jurors. In *Vincents case*, 91 Md. 718, it was held that the provisions of our statute fixing twenty-three as the number to constitute a grand jury is mandatory, and that when an indictment shows upon its face that it was found by a jury composed of only twenty-two members it will be quashed upon demurrer. In the present case it appears, both from the express words of the plea, and from the list of grand jurors appended to the plea and referred to therein, that upon the first day of the term, a foreman was selected from the list of forty-eight previously drawn, and that at the same time, twenty-two other names were drawn from said list, and that these twenty-three men were then empannelled and sworn as the grand jury for that term. Sec. 177A of the Act of 1904, ch. 560, regulating the drawing of juries in Prince George's County provides that the persons selected as jurors "shall all be taxpayers and be able to read and write the English language." The plea avers "that said indictment was found and presentment made, to wit, as appears from the appendix hereto, by a grand jury consisting at its formation, of only *twenty-two* legally qualified members, instead of twenty-three as required by law, the said twenty-two assuming to act as grand jurors, and were insufficient in law to form a valid presentment or indictment, in that one John W. Cox of the

said list furnished the Court and empannelled and sworn as one of the grand jurors, was incompetent in that he could neither read nor write the English language and was excused by the Court as incompetent, and his place not filled; and the defendant therefore charges that the said presentment or indictment was not found by a legally qualified and competent grand jury of Prince George's County, and he prays that the same may be quashed."

The demurrer to this plea must be taken as admitting that Cox was one of the twenty-three men empannelled, that he could neither read nor write the English language, that he was excused by the Court, and that his place was not filled, all these being facts well pleaded; but it does not admit, that he was not competent as a juror nor that the indictment was not found by a legally competent and qualified grand jury, these being conclusions of law for the Court. Upon the list of grand jurors appended to the plea and certified by the clerk of the Court, the word "excused" follows the name of Cox, but there is nothing in this appendix, or in the plea itself, to show on what day, or at what hour in the day he was excused. So that the question is whether there were twenty-three qualified grand jurors empannelled and sworn when the jury was organized, for if there were, then the subsequent excusing of Cox could not invalidate the grand jury; and the determination of this question depends upon whether the provision that each juror must be able to read and write the English language is mandatory or directory. The appellee contends that the *Vincent case* is conclusive of this case, because it was there said that a grand jury can only be legally organized by empannelling twenty-three qualified men. But in that case the only question was as to the *number* required to organize a valid grand jury, while here, the only question is as to the *qualification* of one of the twenty-three, and the disqualification must be decided without referring to anything decided or said in the *Vincent case*, 91 Md. 718.

In *Green's case*, 59 Md. 126, it was said that the general method prescribed for drawing juries is mandatory, "and this

was repeated in *Vincent's* case. In *Glasgow's case*, however, 59 Md. 209, decided later than the *Green case*, the Court said, "The statute is to be regarded mainly as directory in its multifarious provisions." It is therefore obvious that *general* expressions upon this subject, taken from any particular case must be considered with reference to what was in each case considered and decided. Whether a particular provision of a statute is to be held mandatory or directory, does not necessarily depend merely or exclusively upon the language in which it is declared, but in large measure upon the character and purpose of the provision, and the legislative intent, to be deduced from a proper consideration of the means provided for its certain operation, and of the consequences which would follow from one or the other construction. Positive commands and positive prohibitions have alike been held directory. An illustration of the first is found in *State* v. *Balt. Co.*, 29 Md. 516, where a statute provided that the County Commissioners "shall within twenty days after the passage of the Act, order an election," &c., and the Court held this provision directory only in spite of the positive command. Illustrations of the latter are found under statutes of several States, similar to our own by which it is forbidden to put in the jury box the name of one who has been drawn as a juror within a certain prescribed time, and where it has been uniformly held that such provision does not so far disqualify a person whose name is drawn within that time as to render invalid an indictment found by a grand jury of which a person so drawn is a member. 17 *Amer. & Eng. Ency. of Law*, 2 ed. 1266.

In *Vincent's case* it required only care and attention on the part of the Court and the clerk to ensure the empannelling of the full number of twenty-three jurors, and if twenty-two were held sufficient, it could follow that any number not less than thirteen must equally be so held. It cannot be supposed that the Legislature intended to permit the Court thus to nullify its requirement, or to sanction the consequences which we have mentioned.

In *Green's case* (*supra*), on the other hand, it was held that

the duty imposed upon the Judge in respect to the selection
of persons from the box over twenty-five and under seventy
is directory only; and the Court said : "The statute provides
no method of ascertainment. It would be impossible for the
Judge to know with certainty whether all the persons he se-
lects from the box are under seventy and over twenty-five.
Ascertainment, at the time of drawing or selecting is imprac-
ticable, and is not provided for." So also in *Johns* v. *Hodges,*
60 Md. 221, the Court said, "While under our present system
the law *aims* to exclude persons under twenty-five years of
age from serving on juries, from the nature of the methods
prescribed by the statute for drawing a jury, no certain meas-
ure provided for the absolute exclusion of such persons." In
that case the question arose upon a motion to the Court to
refuse to certify to the Orphans' Court a verdict upon a caveat
to a will, on the ground that one of the jurors was under
twenty-five, and the Court refused the motion as coming too
late, but it cannot be said how the question could have been
decided if it had arisen upon the organization of a grand jury.

The difficulty of ascertaining with certainty whether persons
on the lists can read and write is far greater than the difficul-
ties in the cases cited, and no means are provided for such
ascertainment. The poll-books are presumed to be signed
by the voter who can read and write, but this is often neglected
and not infrequently men can sign their names when they can
write nothing else, and cannot read at all, while the tax-lists
disclose nothing in this respect. The consequence of holding
this provision to be mandatory would be far-reaching and
most disturbing. The probable frequency of mistakes in this
respect would jeopardize the validity of indictments, and the
affirmance of this judgment would offer strong inducements
for collusion between criminals and the venal jurors who in
spite of every precaution are sometimes empanneled.

. It was undoubtedly such considerations as those to which
we have adverted which caused the United States Circuit Court
for the Southern District of Ohio to hold in the *U. S.* v. *Am-
brose,* 3 Fed. Rep. 283, that where a grand jury was drawn

under the Act of Congress of 1879, and the name of one of the jurors who assisted in finding the indictment was not put into the box, nor drawn from it, by any competent authority, and there was no imputation that such name appeared in the *venire* through bad faith, this was an irregularity only which would not vitiate the action of the grand jury.

For the reasons we have given the judgment will be reversed and the cause be remanded that the traverser may be tried upon the indictment.

> *Judgment reversed and cause remanded.*

(Decided March 22nd, 1905.)