(Decided 12th July, 1882.)

GEORGE BRASHEARS *vs.* THE STATE OF MARYLAND.

*Secondary evidence of the Contents of a Forged promissory note—Traverser testifying in his own behalf—Act of 1876, ch. 357—Right of State's Attorney to argue to the Jury that the Conduct of the Traverser when Testifying, raised a Presumption of his guilt.*

Upon an indictment for forging, and uttering a forged promissory note with intent to defraud, the proof at the trial as set out in the opinion of this Court, in respect of the existence and loss of the note, and the search made therefor, was deemed sufficient to lay a foundation for the introduction of parol evidence of its contents.

At the trial of a party for forging, and uttering a forged promissory note with intent to defraud, after the State had offered testimony tending to prove that the note had been forged by the prisoner, and also that on a day specified, he had uttered, or attempted to dispose of it to one T. C. as genuine, the traverser, in his own

behalf, voluntarily, went upon the witness stand, and confined himself, in testifying, to the simple statement that he could not write. HELD:

That the conduct of the traverser on the witness stand, and his silence, when testifying, as to matters involved in the pending inquiry, which were certainly within his knowledge, were circumstances, which the jury had a right to consider in deciding upon the credit due to the witness, in connection with the other facts proved in the case, and were, therefore, necessarily, circumstances upon which the State's Attorney had a right to comment in addressing the jury, and to argue that they raised a presumption of the guilt of the traverser.

APPEAL from The Circuit Court for Frederick County.

The case is stated in the opinion of the Court.

The cause was submitted to BARTOL, C. J., STONE, GRASON, MILLER, ALVEY, ROBINSON, and IRVING, J.

*P. F. Pampel,* and *Francis Brengle,* for the appellant.

*Charles J. M. Gwinn, Attorney-General,* for the appellee.

MILLER, J., delivered the opinion of the Court.

The indictment against the appellant contained two counts, the first for forging, and the second for uttering a forged promissory note with intent to defraud. After a demurrer had been overruled, he pleaded not guilty, and upon trial the jury found him not guilty on the first but guilty on the second count. In the course of the trial he took two exceptions to the rulings of the Court, and these alone are brought up for review by this appeal, and will be disposed of in their order.

1st. The first exception presents the question whether by the testimony adduced to the Court, a sufficient foundation was laid for the introduction by the State of second-

ary evidence of the contents of the note set out in the indictment. The rule of law upon the subject is the same in criminal as in civil cases. If the instrument be destroyed or lost, the party seeking to give secondary evidence of its contents, must give some evidence that the original once existed, and must then prove its destruction positively, or at least presumptively, as by showing that it has been thrown aside as useless, or he must establish its loss by proof that a search has been unsuccessfully made for it in the place or places where it was most likely to be found. What degree of diligence is necessary in the search cannot easily be defined, *as each case must depend much on its own peculiar circumstances ;* but the party is generally expected to show that he has in good faith exhausted, *in a reasonable degree,* all the sources of information and means of discovery which the nature of the case would naturally suggest, and which were accessible to him. As the object of the proof is merely to establish a reasonable presumption of the loss of the instrument, and as this is a preliminary inquiry addressed to the discretion of the Judge, the party offering secondary evidence need not, on ordinary occasions, make a search for the original document, as for stolen goods, nor be in a position to negative every possibility of its having been kept back. 1 *Taylor on Ev.,* sec. 399; *Roscoe's Cr. Ev.,* 7–8; *Wharton's Cr. Ev.,* sec. 210; *Roscoe's Nisi Prius Ev.,* 6–7–8.

That the note referred to in this indictment once existed is established beyond doubt. The witnesses trace it substantially as follows: It was first in possession of Ryan as constable, and he delivered it to Clingan, the foreman of the grand jury, at their session. From him it passed to Baker, one of the clerks, and from him to McCardle another clerk to the grand jury. McCardle had it in the pocket of his pants for some days, when he brought it to the grand jury room for the State's attorney, and that

was the last he saw of it. Mr. Motter, the State's attorney says, he got the note in the grand jury room from front of the foreman, and framed the indictment from it, and that his recollection is that he returned it to Clingan just before the grand jury adjourned, with a request to give it to McCardle or Ryan, but Clingan says he never received it from Motter, and McCardle and Ryan are both positive it was never returned to them. By the weight of testimony, therefore, it was traced directly to Mr. Motter as the last person in possession of it, and he proves "that he has made search among his papers for the note, but has been unable to find it, and that the note cannot be found by him." But besides this, Baker states that at the request of the State's attorney he has searched in the pockets of the clothing he wore during the session of the grand jury, except in the pockets of a white vest which has been washed since; that he also searched through an envelope where he always keeps papers other than those concerning his own business, and has also looked through his own papers, the search occupying five minutes; that he never looked about his house anywhere, but he is positive he did not have the note in his possession after he returned it to McCardle, and he does not know where it is. McCardle is also positive that he has not the note; that at the request of the State's attorney he has looked through his private drawer, and the clothing he had on during the session of the grand jury, but did not find it. Clingan says he has not the note; that he made search for it in his clothing, but not among his papers; that he did not take any papers from the grand jury room, and did not take this note away, and did not recollect of any of the other grand jurors having the note. And Mr. Steiner, the clerk of the County Commissioners who has the key of the grand jury room, when the grand jury is not in session, testified that he has looked, since the grand jury adjourned, in the grand jury room, and has found no

note there. Taking all this testimony together, we are all clearly of opinion it was quite sufficient to gratify the rule, and therefore, the Court rightfully permitted the State to proceed to offer to the jury parol evidence of the contents of the note set out in the indictment.

2nd. From the second exception it appears that after the State had offered testimony tending to prove that the note had been forged by the prisoner, and also that on the 19th of August, he had uttered, or attempted to dispose of it to one Thomas Clagett as genuine, the traverser in the production of testimony for his defence, went upon the witness stand in his own behalf, and was confined in his examination by his counsel to the *single inquiry*, whether he was *able to write*, which he answered in the negative, and closed his testimony. Then in the course of the arguments to the jury by the respective counsel, the State's attorney in commenting upon the traverser's own testimony, argued that his failure in his testimony to contradict that of the State tending to prove his making and offering the note to Clagett, or to refer to the same, was a circumstance which raised a presumption of his guilt, to which course or line of argument the traverser by his counsel objected, but the Court overruled the objection, and permitted the State's attorney to continue to so argue, and to this ruling the traverser excepted.

The Act of 1876, ch. 357, provides, that in the trial of all indictments the person charged "shall, at his own request, but not otherwise, be deemed a competent witness; but the neglect or refusal of any such person to testify shall not create any presumption against him." Here the traverser did not neglect or refuse to testify. On the contrary, he voluntarily became a witness on his own behalf. His testimony thus given was open to observation by the attorney for the State and by the jury. He knew that he was upon trial for uttering a forged note, and he certainly knew whether he had or had not uttered it, and if he had

done so, whether he had so uttered it with intent to defraud. But he confined himself in testifying to the simple statement that he could not write, though he must have known that this circumstance was entirely consistent with the guilty uttering by him of the note in question. His conduct on the witness stand, and his silence, when testifying, as to matters involved in the pending inquiry, which were certainly within his knowledge, were circumstances which the jury had a right to consider in deciding upon the credit due to the witness, in connection with the other facts proved in the case, and they were, therefore, necessarily circumstances upon which the State's attorney had a right to comment in addressing the jury. But in addition to these views, which we have adopted from the brief of the Attorney-General, we find that a similar question arose under the same statute in the State of New York, in the case of *Stover vs. The People,* 56 *N. Y.,* 315. In that case the accused was tried for larceny, and in his charge the Judge told the jury they were at liberty to consider, as a circumstance, the failure of the accused, while a witness, to give any account as to where the money found upon him had been kept, in the interval from the time he claimed to have received it until it was so found. To this portion of the charge his counsel excepted, and it was argued in his behalf, that as he could not be made a witness at all, except by his own request, and as the statute declared that his failure to be a witness shall not create any presumption against him, so if he requests to be a witness and becomes such, he need give testimony only as to such parts of the case as he may choose, and as to the other parts, as to which he does not request or desire to give testimony, no presumption can be created against him for his failure to testify as to such parts of the case. But the Court refused to adopt this construction of the law, and said: "True, it is at the option of the accused whether or not to become a witness. When he has exer-

cised this and become a witness, he is made competent for all purposes in the case; if by his own testimony he can explain and rebut a fact tending to show his guilt, if innocent, and he fails to do so, the same presumption arises from his failure that would arise from a failure to give the explanation by another witness, if in his power so to give it. The reason for the presumption is alike in both cases. It arises from the known desire of parties to repel or explain accusatory evidence against them, if in their power; and the basis of the presumption is, that the case shows that it is in their power if innocent. Hence a failure tends to show an absence of innocence." We concur in these views, and it follows there was no error in the ruling contained in this second exception.

*Rulings affirmed, and*
*cause remanded.*

(Decided 12th July, 1882.)