## JOSEPH HOLLARS

### *vs.*

## STATE OF MARYLAND.

*Criminal Court: grand jury; irregularities in drawing names;*
*clerical misprision of names; party meant, the one actually*
*drawn. Indictments: motion to quash; grand jury;*
*irregularity in selection; effect of.*

A traverser having been indicted for a violation of liquor
laws, made a motion to quash the indictment, on the ground
that the name of one of the grand jurors by whom the indict-
ment was found, was not on the list of names from which the
jurors were to be selected, and that his name had been at any
time placed in or drawn from the list from which such names
were to be drawn; the State, in its answer, alleged that the
juror drawn was the one intended to be drawn, but by a clerical
error the name was accidentally misspelled; the traverser de-
murred: *Held,* that as the demurrer admitted the juror actu-
ally drawn was the one intended to be drawn, and as no injury
had been shown or alleged, the error was immaterial.

pp. 369-370

The motion to quash was a proper way to raise the question.
p. 368

Section 1 of Article 51 of the Code, stating the qualifications
for grand jurors, is directory merely; and to invalidate an
indictment upon the non-age of a juror, it must be made to
appear to the court that the traverser has been prejudiced by
reason thereof. p. 372

Unless irregularities, incident to carrying out in good faith,
the provisions of the law made for the selection of juries, are
shown materially to violate the statute, or so affect the juries
as to prejudice the right of citizens, such irregularities should
not be treated as vital. p. 376

*Decided February 12th, 1915.*

Appeal from the Circuit Court for Baltimore County. (DUNCAN, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Elmer J. Cook* and *William H. Lawrence,* for the appellant.

*Edgar Allan Poe, Attorney-General,* (with whom was *George Hartman, State's Attorney for Baltimore County,* on the brief), for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

Joseph Hollars, a duly licensed dealer in spirituous and fermented liquors, was indicted by a Grand Jury for Baltimore County, upon the charge that he had violated the liquor laws of that county (Act of 1908, Chapter 495) by the sale of beer upon Sunday. Through his counsel he moved to quash the indictment on the ground that the Grand Jury, by which the indictment was found, had been improperly constituted, and that the defects were of such a nature as to render any indictment by that body null and void. The motion to quash being overruled, upon trial, Hollars was found guilty and sentenced to pay a fine of three hundred dollars. This appeal, which is taken from that judgment, raises the question of the correctness of the ruling of the Court in refusing to quash the indictment. That the motion to quash was a proper method by which to call in question the legality of the organization of a Grand Jury has been abundantly settled. *Cooper* v. *State,* 64 Md. 44; *U. S.* v. *Gale,* 109 U. S. 65.

The reasons for which the Circuit Court for Baltimore County was asked to quash the indictment, and which are

relied upon now, all relate to the composition of the Grand Jury by which the indictment was found. The record in the case is not as full or explicit with regard to some of the matters involved as was to have been desired, but this Court· can deal only with that which appears ·in the record, and the natural and legal intendment to be drawn from that which does appear there.

One of the grounds upon which the indictment is assailed is that Henry N. Grenninger, one of the Grand Jurors by whom the indictment was returned, was not on the list of two hundred names filed in the office of the clerk of the Circuit Court from which the jurors for that term were selected, nor was his name at any time placed in or drawn from the box from which the names of persons for the jury for said term were drawn.

From the answer filed on behalf of the State, it appears that by an error on the part of a clerk in the office of the Supervisors of Elections the name of Harry N. Granger was furnished to the County Commissioners, and by them forwarded to the clerk of the Circuit Court; that the clerk of the Circuit Court placed the name of Harry N. Granger in the box, and that his name was drawn as one of the Grand Jurors; that after the drawing had been made the error was discovered by the Court and the sheriff directed to summon Henry N. Grenninger, and that "the said Harry N. Grenninger was the identical person intended by the Court."

This answer of the State was demurred to by the traverser, and the effect of that demurrer was necessarily to admit the facts set out in the answer. This would bring the case under the rule laid down in the *Case of a Juryman,* 12 East. 231, in which R. Curry had responded to the name drawn of J. Curry, and in the case of *Roe* v. *Devys,* Cro. Cases, *Temp.* Charles, 563, where a juryman named Samuel was impaneled and sworn by the name of Daniel, but in neither case was the error held to invalidate the action of the jury. These cases were approved and followed in this State in *Munshower* v.

*State,* 56 Md. 514, where in a murder case there had been an error in the middle name of one of the jurors, the name as drawn from the box being Joseph H. Brown, and he was designated on the panel as Joseph B. Brown. From these cases and others that might be cited, it is clear that a clerical error either in an initial or in a name itself, will not vitiate a verdict or an indictment where the person serving on the Grand Jury or impaneled on a petit jury is the person intended by the Court to have been selected, and no prejudice has resulted to the accused. *U. S.* v. *Reed,* 2 Blatch. 435; *Fed. Cas.* 16134.

The motion to quash does not allege anything prejudicial to the accused resulting from the incorrectness of the name placed in the jury box, and by the demurrer the traverser admits that Henry N. Grenninger was the identical person intended by the Court under the name of Harry N. Granger. No sufficient ground for the granting of the motion, therefore, can be predicated upon this ground.

A second ground of attack upon the indictment is an error in the names of Stephen G. Rawlings, Mercer B. Porter and Jarrett Lee. In each instance the error complained of was alleged in the answer, and admitted in the replication, to have been of a clerical nature, and what has been said with regard to the mistake in the name of Grenninger sufficiently covers all of these cases .

A further ground of attack is that John C. Felter, one of the Grand Jurors, was under the age of twenty-five years. The Code, Art. 51, sec. 1, provides, "that no person shall be selected and placed upon a panel as a juror who shall not have arrived at the age of twenty-five years." The appellant insists that this language is mandatory, and inasmuch as Felter was under twenty-five, that any indictment found by a Grand Jury of which he was a member is necessarily null and void. The third section of the same article declares all persons over seventy years of age and delegates, coroners, constables, school masters and pharmacists exempt. In construing these provisions this Court has heretofore held with

regard to section 3 that the language was directory rather than mandatory, and in *Green* v. *State,* 59 Md. 123, JUDGE IRVING, speaking for this Court, dealt with both section 1 and section 3, in the following language: "In respect to the direction about age the weight of authority is strongly in support of the doctrine, that the duty imposed on the clerk of the Commissioners about the list of male taxables, not known to him to be under twenty-five years of age and the judge in respect to the selection of persons from the box over twenty-five and under seventy, is directory only. The law requires of them, of course, the honest exercise of their judgment respectively as to the age of persons put on the list, or placed in the box, but it is impossible for the clerk to know with absolute certainty who is under and who is over twenty-five years of age. The statute provides no method of ascertainment, he is only directed to exclude such persons from the list as are known to him to be under twenty-five. All over that age he is to put on * * *. There can be no doubt that a wilful disregard of duty in this particular would be punishable, but a simple mistake can not and ought not to affect the validity of the list which he makes for the Court's guidance. Where the jury is selected and drawn it would be impossible for the judge to know with certainty whether all the persons he selects for the box are under seventy or over twenty-five. Ascertainment at the time of drawing and selecting is impracticable and not provided for. His judgment is his guide. If the judge makes a mistake the statute directs how it may be corrected, and expressly declares it shall not vitiate the drawing."

It is true that in the *Green Case* the endeavor to set the verdict aside upon the ground of age, was held to come too late, but the language quoted is clearly indicative of the view of the Court as to the proper construction to be placed upon the statute.

In the case of *Johns* v. *Hodges,* 60 Md. 215, a verdict was rendered by a jury, two members of which were under the age of twenty-five years, and a motion for a new trial in

that case was made upon the ground of the non-age of these two jurors. The decision virtually turned upon the time when the objection was made, and that as it was not made until after verdict, it was too late to be availed of, but in the course of the opinion occurs the following language, bearing upon the question now being considered.

"Under our present jury system while the law aims to exclude persons under twenty-five years of age from serving on juries, from the nature of the methods prescribed by the statute for drawing a jury, no certain means are provided for the absolute exclusion of such persons. The presumption arises, therefore, not that the officers charged with the duty of preparing the lists have wholly succeeded in securing those free from all statutory disability, but that they have succeeded so far as diligence and good faith within the scope of their opportunities have enabled them to do so."

In the light of these decisions, this Court must hold that the statute, section 1 of Article 51 is directory merely, and that to invalidate an indictment upon the ground of non-age it must be made to appear to the Court that a traverser has been prejudiced by reason of the non-age of the juror.

It further appears from the pleadings in this case that there were in the box the names of a number of persons which had been stricken from the poll book in October, 1913, one at least who had died, and some who had removed, but with the exception of the names mentioned it does not appear that any of these persons were drawn from the box as jurors, certainly none upon the Grand Jury, and the presence in the box of a name which perhaps should not have been there, could not operate in any way to the detriment of the traverser if he was not upon the Grand Jury, and *a fortiori* if the name was never drawn from the box at all, he could in no way have been injured.

In many of the counties of this State there are local laws in force with regard to the procedure for the drawing of a jury, but for Baltimore County there has been no such local

legislation, and the composition of juries is entirely governed by the provisions of the general law.

By section 6 of Article 51 it is made the duty of the clerk of the County Commissioners to make out and file with the clerk of the Circuit Court for the County, not less than twenty days before the beginning of the second regular term of said Court after each and every general election, a fair and complete list of the male taxable inhabitants or residents of said county who are not known by the clerk to be under the age of twenty-five years, and to which list the clerk is required to append a certificate. From the agreed statement of facts filed in this case it is admitted in paragraphs 1 and 8 that no such list was made out by the clerk of the County Commissioners and filed with the clerk of the Circuit Court. By section 7 of the same Article provision is made for the drawing of jurors; for notice of the time and place of the drawing to be given. It further provided that at such time and place the judge or judges shall select from the list last furnished by the clerk of the County Commissioners, and *from the poll books* of the several districts of said county that shall be returned and filed in the clerk's office after any general election that may be last held, the names of 200 persons, which names so selected shall go into the box from which the requisite number of grand and petit jurors is to be drawn.

The contention is, that under the *Avirett case,* 76 Md. 510, the names in the box from which the Grand Jury was drawn not having been taken from the list required to be furnished by the County Commissioners no valid drawing could be made, but the decision in that case will not sustain any such contention. The list which is required to be furnished by the County Commissioners is a list of persons taxable, and the 4th section of Article 51 expressly provides that "no property qualification shall be required in any juror." Hence, since the list provided for in section 6 is a list of the male taxable inhabitants or residents of the county only, the poll

books are given as an alternative or additional source from which jurors may be obtained. This conclusion is fully borne out by the language of JUDGE McSHERRY in the *Avirett case,* where he said, that if the selections "be made from sources not mentioned by the statute instead of from *the two specifically prescribed* thereby," that a jury so drawn would be at variance with the law, and an indictment found by such a jury would be absolutely null. In the case of the *State* v. *Keating,* 85 Md. 194, it was said by JUDGE BOYD, speaking for this Court, that the judge drawing the jury "must see that those selected are either on the tax list or poll books." It will thus be seen that the law as previously construed by this Court distinctly recognizes two separate and independent sources from which the names of jurors may be obtained.

It has already been observed that no list of male taxable inhabitants or residents of Baltimore County was furnished by the County Commissioners to the Clerk of the Circuit Court. The second paragraph of the petition of the traverser alleges that the list of two hundred names selected, was not taken from either a list of taxable inhabitants or from the poll books; the answer is that the list of two hundred names was selected from the legally qualified voters of the several election districts of the county, and upon this allegation issue was joined. In the agreed statement of facts, the very first stipulation is to the effect that no tax list was filed as provided for in section 6, and the same is repeated in paragraph 8 of the agreed statement of facts. But there is nothing in the answer or in the agreed statement of facts which negatives the selection of the names from the poll books. On the contrary it affirmatively appears that the County Commissioners furnished the Clerk of the Circuit Court a list of the voters prepared by a clerk in the office of the Supervisors of Elections, which was in the possession of the judge when making his selections. The poll books mentioned in the statute were but copies of the registration lists giving the names

and residences of the qualified voters, and while the poll books as there specified no longer exist, the list in the possession of JUDGE DUNCAN was in effect exactly the kind of list set out in Art. 51 as a proper source from which to make the selection of names to be placed in the box, for while changes with respect to the books designated as poll books have been made in the election laws of the State, no corresponding change has been made in the law with respect to jurors. In the case of *Downs* v. *State,* 78 Md. 128, JUDGE FOWLER, speaking for this Court, said: "Under the registration law now in force, the registry of voters and the poll books so far as the names are concerned, are identical." And in that case it was held if the registry books were used as a source from which to select the names of jurors, there was a sufficient compliance with the statute. The registration books are the official record of the qualified voters of a county, and the use of them have been in terms approved by this Court, but since the Legislature has not seen fit to make any alteration in the provision of the jury law as to the use of poll books, and the list used in this case was, as were the poll books, a copy of the names appearing on the registration books, the provision of the statute was sufficiently gratified by the use of the list so furnished to the judge. If there had been an allegation of fraud in the preparation of the list by the clerk in the office of the supervisors, or the willful addition to or omission from it of names, an entirely different case would have been presented. But there is no suggestion of anything of this character.

Annual registration no longer prevails in this State. The same registry books may be, and are, used from year to year, and the fact that some of the names appearing on such registry were marked as stricken from the list of qualified voters, or that they had died or removed from the county in October, 1913, can raise no inference that the books were not used by the judge in September, 1914, to select the names to be placed in the box, and if by an oversight of the clerk in mak-

ing the copy or of the judge in selecting, some names which had been stricken off found their way into the list of two hundred persons from which the jurors were to be drawn, it was an irregularity with regard to which there is no imputation or allegation of bad faith.  This objection, therefore, is fully met in the case of *State* v. *Glascow,* 59 Md. 210, where the language of this Court was, that "unless irregularity incident to carrying out the directions of the statute in good faith shall be shown to materially violate it or so affect the juries as to prejudice the rights of the citizen, these irregularities should not be treated as fatal."

The case of *Avirett* v. *the State,* 76 Md. 510, is much relied on by the appellant, but the important question in that case was wholly different from the one now presented.  There the names of jurors placed in the box had not been selected from any source whatever pointed out by the law, or authorized by it; but Judge Hoffman had selected the names of persons who had been suggested to him by individuals, some of whom were members of the bar and who might be supposed to be employed in cases to be tried before juries of which one or more of those whom they had suggested would form a part.  Such a source was strongly condemned by this Court, alike as being unauthorized by law, and having at least the possibility of rendering the impartial trial of cases more difficult, and as opening a way for a grave abuse in the administration of justice.  That case was, therefore, radically different from the one now being considered.

Numerous authorities from other States were cited in the argument.  An examination of these cases discloses the fact that they either enunciated certain general principles, which are readily conceded by every one, or else were construing the statutes of the particular State, and, therefore, by no means controlling of the present case.

With regard to all these cases it may well be said, as said by Judge Pearce in *The State* v. *McNay,* 100 Md. 622: "It is obvious that general expressions upon this subject, taken

from any particular case, must be considered with reference to what was in each case considered and decided. Whether a particular provision of a statute is to be held mandatory or directory, does not necessarily depend merely upon the language in which it is declared, but in large measure upon the character and purpose of the provision and the legislative intend to be deduced from a proper consideration of the means provided for its certain operation and the consequences which would follow from one or the other construction. Positive commands and positive prohibitions have alike been held directory."

With regard to the provisions of a local law requiring that the jurors should be able to read and write, the opinion says: "The consequence of holding this provision mandatory would be far-reaching and most disturbing. The probable frequency of mistakes in this respect would jeopardize the validity of indictments and the affirmance of this judgment would offer strong inducements for collusion between criminals and the venal jurors who in spite of every precaution are sometimes empanneled. It was undoubtedly such considerations as these which caused the U. S. Circuit Court for the Southern District of Ohio to hold in *U. S.* v. *Ambrose,* 3 Fed. 283, that where a Grand Jury was drawn under the Act of Congress of 1879 and the name of one of the jurors who had assisted in finding the indictment was not put into the box or drawn from it by any competent authority, and there was no imputation that such name appeared in the venire through bad faith, this was an irregularity only which would not vitiate the action of the Grand Jury."

For the reasons indicated this Court concurs in the rulings made by the Circuit Court for Baltimore County, and the judgment of that Court will be affirmed.

*Judgment affirmed, with costs.*