KING *v.* STATE

[No. 130, October Term, 1947.]

364

*Decided April 22, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Philip H. Dorsey, Jr.* and *Wm. O. E. Sterling,* with whom were *Paul J. Bailey, Joseph D. Weiner* and *Dorsey & Sterling* on the brief, for the appellant.

*Richard W. Emory, Deputy Attorney General,* and *John H. T. Briscoe, State's Attorney for St. Mary's County,* with whom was *Hall Hammond, Attorney General,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by John King, appellant, from a judgment and sentence to a fine of $300 and costs in the Circuit Court for St. Mary's County, on conviction of violating the gaming laws by keeping a slot machine.

The appellant alleges as error the overruling of his pleas in abatement: to the validity of the grand jury for the March Term and Special Term in June, 1947; and to the Array of the petit jury for September Term, 1947. He also alleges error in the rulings on testimony and on the argument to the jury.

He asserts that the selection of the jury panel, from which the grand jury was chosen, did not comply with the requirements of the jury law applicable to St. Mary's County, because (1) the judge failed to select the jury panel from the poll books of the county and from the list of male taxable residents of the county furnished by the clerk to the county commissioners; (2) that he included in the jury panel one hundred forty-nine names

of male citizens of the county rather than one hundred fifty names, because the name of J. Clyde Jarboe was twice placed on the jury panel, he being the same person in each instance; and (3) because the judge placed on the jury panel the name of J. Clyde Jarboe, firstly, from the first election district, and secondly, from the second election district, he being the same person and he being drawn as a member of the grand jury.

Sections 84, 85, and 86 of Article 19 of the Public Local Laws of Maryland, 1930, governed the selection of jurors in St. Mary's County. Section 84 of Article 19 provides substantially that the clerk to the county commissioners for St. Mary's County shall make out and file with the clerk of the circuit court, at a time specified therein, a full and complete list of all the male taxable residents of said county whose names appear on the tax books thereof, and who are not known to said clerk to be less than twenty-five nor more than seventy years of age. It is provided by Section 85 of Article 19, in part, that the judge or judges of the Circuit Court for St. Mary's County, not less than fifteen days before the commencement of each jury term of said court, in the presence of such members of the bar as shall think proper to attend, notice of the time and place having been first given to said members of the bar, to proceed to select from the list provided for by Section 84 of Article 19 and from the poll books of the several election districts of said county a panel to consist of one hundred fifty names of male citizens of said county with special reference to their intelligence, integrity, and sobriety, and without any reference to their political opinion, which said names shall be apportioned to the several election districts of said county in proportion to the number of registered voters and male taxpayers in each of said respective districts. The judge shall append to the said list of one hundred fifty names a certificate certifying that said list has been selected in accordance with the provisions of the act. Article 19, Section 86, pro-

vides the method and procedure for drawing the jury from the names so selected.

It is stipulated that of the one hundred fifty names composing this jury panel at least fifty of those names did not appear upon the tax list, and of those names which did not appear on the tax list about nineteen either did not appear upon the poll books or, if they did, they appeared on such books by different names and/or under different districts on the jury panel. Appellant claims that the stipulation definitely establishes that at least two names listed on the jury panel did not appear either on the tax list or the poll books, namely, George Dedderer and George H. Thompson. George Dedderer, drawn on the petit jury, was excused because he was neither a taxpayer nor voter and George H. Thompson was not drawn on either the grand jury or petit jury. It therefore appears that the names of all the grand jurors who served in June, 1947, who presented and indicted the appellant, were either on the poll books or the assessment books of St. Mary's County. It also appears that all of the petit jurors drawn for the September Term, 1947, when the accused was tried, either appeared on the poll books or assessment books with the exception of Bradford Reeves and George Dedderer. Bradford Reeves was challenged for cause, and this challenge allowed by the court, because he had sold his property prior to the time of the trial. George Dedderer was excused by the court from service on the petit jury. It is therefore established that all members of the grand jury who indicted the accused either appeared on the poll books or the assessment books, and all members of the petit jury who tried the accused so appeared.

By his first plea in abatement appellant alleged that the jury panel was not drawn from the poll books and the list of male taxable residents of St. Mary's County. He contends that the jury statutes in plain and unequivocal language, stated what a judge must do in the selection and drawing of a jury to meet the requirements of

the law, and unless the judge complied with the provision of the statute in drawing the jury, that jury should. be stricken down.

Chief Judge William M. Loker, who drew the jury in this case, testified that he did not check both the poll books and the assessment records on these particular occasions because he never thought that it was necessary to check both. When asked the question: "On what date did you consult the poll books this time?" he answered: "This time? I said I did not do it this time." He said, however, that in selecting the jury list: "I make inquiry about men of the county, and try to find out, the best I can, whether they are taxpayers, and if they are taxpayers or voters, find out if they are over 25 or under 70; and most important, what I try to find out about those people is their character, how they stand in the community, their reputation. When I get those names, I always inquired very particularly, unless I know myself, I look at the particular thing, then I check back, —in many instances I reckon some of them I may have forgotten,—but I check back, not more in the list of jurors than I do the assessment records, because the assessment record gives me the amount of the assessment, so that I can know how large it is, what kind of man he is,—that is to say, a frugal, industrious man, probably has a larger assessment. Some will give the name of two or three brothers of the same family, and I look back in the assessment record to see which is the same, or ought to be the same, as the jury list, sometimes it is not; and I get it."

Many cases have come before this Court involving the drawing of juries. It has been held that in selecting the jury panel, it is not necessary to show that the names were upon both the tax list and poll books. The selection from either has been held sufficient compliance with the law. *Downs v. State,* 78 Md. 128, 131, 26 A. 1005; *State v. McNay,* 100 Md. 622, 60 A. 273; *Hollars v. State,* 125 Md. 367, 93 A. 970.

In *State v. Keating* 85 Md. 188, 36 A. 840, the Court
held that the judge must see that those selected are either
on the tax list or poll books, but if he has satisfied him-
self as to that, he is not required to examine them at
the time he completes his selection as that would be
mere idle form.

The case of *Hollars v. State,* 125 Md. 367, 93 A. 970,
*supra,* (decided 1915), involved the drawing of a jury
under the Baltimore County jury law. That law required
the clerk to furnish to the court a list of the taxable
inhabitants, as in the case at bar. It further provided
that notice of the time and place of the drawing be given
and that at such time and place the judge or judges
should select from that list of taxable inhabitants and
from the poll books the jury panel. The list of taxable
inhabitants was not furnished to the judge and there
were no poll books in existence for him to consult. The
judge, however, had a list of voters prepared by a clerk
in the office of the supervisors of election when he made
his selection. It further appeared that there were on
the jury panel the names of a number of persons which
had been stricken from the poll books, one who had died,
and some who had removed, but, with the exception of
four names which were misspelled, it did not appear that
any of these persons were drawn from the box as jurors,
certainly not as grand jurors. In that case this Court
held that the presence in the box of a name which per-
haps should not have been there, could not operate in any
way to the detriment of the traverser if he was not upon
the grand jury, "and *a fortiori* if the name was never
drawn from the box at all, he could in no way have been
injured." The Court, in that case, referred to the case
of *State v. Glascow,* 59 Md. 209, 210, at page 212, where
the following was said: "The statute is to be regarded
mainly as directory in its multifarious provisions; and
unless any irregularity incident to carrying out its direc-
tions in good faith shall be shown to materially violate

it, or so affect the juries as to prejudice the rights of the citizen, these irregularities should not be treated as fatal."

In *Lee v. State,* 163 Md. 56, at pages 60 and 61, 161 A. 284, at page 285, where the accused was charged with murder in the first degree and sentenced to death, Chief Judge Bond said: "When the case was called for trial, and on the day of the trial, the challenge to the array of the petit jurors on the panel in attendance was filed, in writing, on the defendant's behalf, and answered in writing on behalf of the state. First, it was objected that, whereas the provisions of the local law governing the make up of a petit jury panel required that the names should be selected from a special list of taxable inhabitants furnished by the clerk of the county commissioners and a special poll list prepared by the clerk of the supervisors of elections, there had been, in fact, no such lists prepared, and the names had been, according to custom in that jurisdiction, first selected by one of the judges from his contacts and information, as those of desirable residents of the county, and then compared with both the general tax books, and the poll list of the supervisors. The law required that men should be selected with reference to their intelligence, sobriety, and integrity, and therefore choice of men from contacts of reliable information was necessary at one stage in the process. Acts of 1929, c. 339, amended by Acts of 1931, c. 25. The objection seems to be, then, in part to the lack of lists specially prepared for the use of the judges, and in part to a reversal of the order outlined in the statute by selection of eligible men before the scanning of the poll list and the tax books, instead of scanning the lists first, and then making the choice from among the names on them. It seems to the court that the difference is not a material one, so far as compliance with the state law is concerned, and involves no substantial likelihood of unfairness, and should not be held to vitiate the trial in this instance, unless the statutes command it. And it was decided in the earlier case of *Hollars v. State,* 125

Md. 367, 93 A. 970, that the method followed in this case was sufficient. The statutory provisions in force at the time of that decision required the same use of the lists as is now required."

The second and third pleas in abatement alleged that the name of J. Clyde Jarboe was placed twice on the list comprising the jury panel, and being in each instance the same person who was thereafter drawn as a member of the grand jury, which presented the presentment and indictment against the appellant, and by reason of the name of J. Clyde Jarboe being placed twice upon the jury panel that panel contained one hundred forty-nine names instead of one hundred fifty names as required by law. From the evidence offered it appears that Judge Loker intended to put J. Clyde Jarboe on the jury panel and his son, Claude Jarboe. An error was made in the name of Claude Jarboe, his name being placed thereon as J. Clyde Jarboe. Therefore, on the jury panel, signed by the judge, the name of J. Clyde Jarboe appeared twice. The judge admits that it was an error and the name of the son was never intended to be J. Clyde Jarboe. He said on one copy the name Claude Jarboe did appear but on the copy he signed the error was made. When the drawing was made the name J. Clyde Jarboe was drawn only once and he served on the grand jury. Had the name of J. Clyde Jarboe been drawn twice, the misspelling of the name would have then been apparent. The names of one hundred fifty men therefore were placed on the panel but the name Claude Jarboe was misspelled as J. Clyde Jarboe. It has been frequently held by this Court that the mere misspelling of the name of a juror does not vitiate the panel. *Munshower v. State,* 56 Md. 514. As pointed out in the case of *Hollars v. State, supra,* of the names placed on the jury panel some had been stricken from the poll books, one at least had died, and some had removed. The Court in that case held that such error did not vitiate the jury panel. As the jury panel in that case contained the name of at least one dead

man there really were the names of only one hundred forty-nine persons on the panel.

Under the law and evidence hereinbefore set forth we conclude that the three pleas in abatement were properly overruled by the trial court. The purposes of the statute were accomplished in the selection of both the grand jury, which indicted, and the petit jury, which convicted the appellant. Of course, as has been stated many times by this Court, the better practice is to check the jury panel with both the tax list supplied by the clerk to the county commissioners and with the poll books. One or the other of these lists must be checked.

In the argument in this Court the appellant's counsel stressed the fact that during his testimony in response to a question, Judge Loker admitted that he said to the clerk of the court: "We are going to get—what—a convicting jury, or something like that, just fooling with him, he knew I was fooling." Judge Loker later in his testimony said that this was absolutely a joke and said in a joking mood. Taking the testimony as a whole it is evident that the judge in selecting the jury tried to get men of intelligence, integrity, and sobriety and that in his search for jurors he was constantly on the lookout for men of this character. The appellant also stressed the fact that the judge admitted some of the names were procured by him from persons who attended a civic league meeting. The judge particularly stressed the fact that he did not get the names from the civic league but from persons who attended the meeting. It is the practice in this state, as was done in the case of *Lee v. State, supra,* for the judge to first select names "from his contacts and information, as those of desirable residents of the county." Judge Loker in his testimony stated that he tried to get men who were not interested in the matters to be tried. He tried to get disinterested parties; honest upright men; men whom he thought would do the right thing; men who would indict if they had proof before them necessary for an indictment, if it was proper

to indict. Of course, a judge should select unbiased persons as jurors and those with no special interest in particular cases. This Court is of opinion that the testimony here shows that the judge followed this practice properly.

The indictment in the case at bar charged the appellant with committing the crime alleged, on May 31, 1947. Appellant excepts to the overruling of a motion to strike out the testimony of Richard M. Pembroke and Henry George Thompson that they saw slot machines in the bus station where Mr. King was in charge on the 29th day of May, 1947. This was two days previous to the date charged in the indictment, and at that time one of these machines was operated by one of these witnesses by placing a coin in it. As pointed out by Judge Gray in his refusal to strike out this testimony, one of the counts in the indictment charged the appellant with keeping a place for gaming. He further said in denying the motion: "Now, it might be contended that these machines were there for ornaments or decoration; it may be a rather far-fetched argument, but that contention could perhaps be made. Now, if the fact was that it was used for gaming on the 29th, or six months previous to that, that is evidence which the jury can consider in determining whether they were there for decoration, or whether they were there for gaming purposes. We think the testimony is relevant, and the objection is overruled." We think this evidence was admissible to show the motive for which the machines were kept in the bus station. If the machines were kept there for gambling on May 29th, when they were actually operated for gambling, this was evidence that if the machines were there on May 31st, the date charged in the indictment, they were there for the same purpose. It is a well known principle that guilt cannot be established by proving that the defendant has committed other crimes. However, it is firmly established that evidence of acts may be admitted to show motive, intent, absence of mistake or accident, a common scheme, or identity embracing the commission of two or

more crimes so related to each other that proof of one tends to establish the other. The weight of such evidence, of course, is a question for the jury. *Curry v. State,* 117 Md. 587, 83 A. 1030; *Callahan v. State,* 174 Md. 47, 197 A. 589; *Purviance v. State,* 185 Md. 189, 196, 44 A. 2d 474. This motion was properly overruled.

Appellant also objects to the action of the trial court in interrupting counsel for the appellant in his argument to the jury where he compared the prosecution of the case at bar with the prosecution of prohibition cases in prohibition days. At the time this interruption was made, the court stated that there was no evidence before the jury as to what was done in any particular prohibition case, and those cases could not be used as a precedent for argument in the case at bar. We find no error in this action of the trial court.

Appellant also excepts to part of the argument which the state's attorney made to the jury over appellant's objection. During the argument to the jury the state's attorney, Mr. Camalier, said:

"(Mr. Camalier) There had never been any evidence to refute the fact that these illegal machines were in Mr. King's place or not—

"(Mr. Dorsey) I object to that remark.

"(Mr. Camalier) I said there has never been any evidence to refute that these were illegal machines.

"(Mr. Dorsey) Not in Mr. King's place, you said.

"(Mr. Camalier) In Mr. King's place.

"(Mr. Dorsey) In the first place, there is no evidence, properly supported, to show that it was Mr. King's place; in the second place, I think the State's Attorney—

"(Judge Marbury) Wasn't there evidence in the case that Mr. King was the only one in there, that would justify perhaps an inference that he was manager of it, when the two witnesses went in there?

"(Mr. Dorsey) Two witnesses said he was there; that is true.

"(Mr. Camalier) The only person there, other than those two.

"(Judge Marbury) That is right.

"(Judge Gray) The argument thus far is legitimate, gentlemen. You may proceed.

"(Mr. Dorsey) I would like to note an exception, your honor."·

Appellant relies on the Constitutional provision, Declaration of Rights, Article 22, which provides: "That no man ought to be compelled to give evidence against himself in a criminal case." It is also provided by Code, (1939), Article 35, Section 4, that ". . . the neglect or refusal of any such person to testify shall not create any presumption against him." *Brashears v. State*, 58 Md. 563, 567; *Smith v. State*, 169 Md. 474, 476, 182 A. 287. The only objection was that there was no evidence to support the statement of the state's attorney that it was King's place. There is nothing to suggest that the state's attorney was commenting on his failure to testify. We are of opinion that this statement by the state's attorney was not a violation of the Constitutional provision or statute law. *Davis v. State*, 168 Md. 10, 176 A. 281.

The judgment will be affirmed.

*Judgment affirmed, with costs.*