Russell **BRITTON**, James Best, George Flood, Louis Evans, Oliver Jones, Jr., Keith Kern, Allen Brown, and Donald Kahn

v.

H. Stafford **BULLEN**, Jury Commissioner of the Supreme Bench of Baltimore City et al.

Civ. No. 18722.

United States District Court
D. Maryland.

Nov. 13, 1967.

William H. Zinman and Harry Goldman, Jr., Baltimore, Md., for plaintiffs.

Francis B. Burch, Atty. Gen., Maryland, and Thomas A. Garland and George W. Liebmann, Asst. Attys. Gen., Baltimore, Md., for defendants.

Before THOMSEN, Chief Judge, and NORTHROP, District Judge.

PER CURIAM.

Defendants have moved to dismiss for lack of jurisdiction to grant the relief requested and for other reasons this action seeking "both a mandatory and restrictive injunction". Plaintiffs contend and defendants deny that a statutory three-judge court must be convened to hear the case. Plaintiffs argue that the judge to whom the application for injunction was presented must "without further ado" take the steps necessary to convene such a court. Defendants argue that a three-judge court is not required when no substantial question as to the validity of a state statute of general and state-wide application is raised. Since plaintiffs have also raised the question to which of two judges the application was presented, both judges have heard the oral arguments on the question whether a three-judge court is required, have considered the briefs and join in this opinion.

Each of the eight plaintiffs is either a litigant in a civil case pending in the Superior Court of Baltimore City or a defendant in a criminal proceeding in the Criminal Court of Baltimore. The defendants are the Judges of the Supreme Bench of Baltimore City, which has jurisdiction over the operation of said courts,[1] and the Jury Commissioner appointed by the Supreme Bench. Plaintiffs state that they bring this action on their own behalf and on behalf of others similarly situated,[2] pursuant to Rule 23 (a) (3) of the Federal Rules of Civil Procedure. In substance the complaint alleges:

"VII. That at all times and places recited herein, pursuant to State Law, as well as the Rules of the Supreme Bench of Baltimore City, the aforementioned Defendants, in their administrative capacity, through their agent, the Defendant, H. STAFFORD BULLEN, Jury Commissioner, pursuant to and under color of State statutes, ordinances, regulations, usages, practices, and certain other customs undefined by law and/or lawful rules or regulations of the State of Maryland, City of Baltimore, are and have been selecting, assembling, choosing, qualifying, rejecting, excusing, and empanelling people to sit and serve as jurors, on juries, for the purpose of rendering verdicts in criminal and civil cases, within the City of Baltimore, State of Maryland."

---

1. Charter and Public Local Laws of Baltimore City, 1949, sections 382–404.

2. The class is not made clear, except by the allegations with respect to the several plaintiffs, i. e. Caucasian or Negro, residing in Baltimore City, a civil litigant or criminal defendant in a case pending in one of the courts of the City.

"IX. That the long-standing practice of the Defendant Judges, through their agent, H. STAFFORD BULLEN, under color of State statutes, rules, customs, practices and usages, as aforesaid, operate to deprive the Plaintiffs of their constitutional rights of equal protection of the law, and to due process of law, within the meaning of the Fifth, Sixth, Seventh and Fourteenth Amendments of the United States Constitution, by depriving the Plaintiffs of their rights to a fair and impartial trial by jury, in the particulars hereinafter set forth."

"X. That the intent and effect of the jury selection system, by long-standing and established practices, and as actually and systematically practiced and applied by the Defendants under color of such State laws, rules, customs, regulations, practices and usages, previously mentioned, is to deny the Plaintiffs, by virtue of a pattern of purposeful discrimination, a random selection of Veniremen who are, collectively, a representative cross-section of the community of Baltimore City as a whole. More particularly, the intent and effect of the Defendants' jury selection system and practice has been to purposefully and intentionally discriminate against and deny representation on jury panels to populous classes of people comprising a large proportion of the community of Baltimore City as a whole, to wit, Negroes, individuals with less than an eighth grade education, and persons from the lower and lowest economic classes and income groups." (Later paragraphs indicate that plaintiffs do not mean that these "classes of people" are excluded entirely but that there is an unfair overrepresentation of other groups.)

"XI. That the State statutes, and the aforesaid rules of the Supreme Bench, on their face, operate to deprive the Plaintiffs of their Constitutional rights, as aforesaid, in that they are vague, indefinite, and lack precise and reasonable standards requiring the Constitutional method of random selection procedures, designed to insure and secure jurors and juries which constitute a representative cross-section of the community as a whole." (The "State statutes" referred to in this paragraph are not identified either in the complaint, the accompanying memorandum of authorities, or plaintiffs' brief.)

"XII. That the aforementioned unwritten customs, usages and practices of selecting jurors and juries, adopted and employed by the Defendant, H. STAFFORD BULLEN, Jury Commissioner, at his whim and caprice, without regulation of the imposition of proper standards and definitive procedures, substantially contravenes the very State Law which authorizes and empowers the Defendants to make jury selections in the first instance, and otherwise operates to deprive the Plaintiffs of their constitutionally protected rights, as aforesaid, because of the lack of a standard for use in challenges to determine whether the jury has been impartially selected; * * * *"

"XIII. That the failure and omission of the Defendant judges to exercise their rule-making function by and through a written promulgation and publication of a detailed and definitive procedure, containing minimal constitutional standards for jury selection, as aforesaid, deprives the Plaintiffs of their constitutionally protected rights, as aforesaid; * * *"

"XIX. Further, that the State Law which precludes all young adults and/or qualified voters under twenty-five years of age from serving as jurors on juries, operates to deprive the Plaintiffs of fair and adequate representation from a cross-section of the community as a whole, and that this exclusion of young adults, who in all other respects share the same community obligations and privileges as those within the purview of the included class of twenty-five years and older, constitutes an arbitrary, capricious and unreasonable classification,

without any reasonable and justifiable basis whatever, and, as such, amounts to unconstitutional class legislation, and otherwise contravenes the privileges and immunities, the equal protection, and the due process provisions of the Fourteenth Amendment of the United States Constitution."

The complaint further alleges that defendants "have been repeatedly apprised of the defects, evils and total lack of fairness of this selection system by individual cases tried before the Courts of Baltimore City".[3]

The complaint alleges that plaintiffs and the members of the class or classes which each plaintiff represents suffer or will suffer irreparable injury by reason of defendants' actions, policies and practices; "that the State Statutes, customs, usages and practices under which the Defendants are acting, are patently unconstitutional and operate to deprive the Plaintiffs, and each of them, as well as the members of the class or classes which they represent, of their right to due process and equal protection of the laws"; that "the Plaintiffs have no remedy at law to redress these violations of their constitutional rights, and could not possibly do so in their own individual cases now pending in the Courts of Baltimore City".

Plaintiffs pray for a temporary restraining order, a preliminary injunction and a "permanent, mandatory and restrictive injunction against all of the Defendants, enjoining them as follows.

"A. That the Court enjoin the Defendants from continuing to assemble, select and empanel juries in the City of Baltimore, pursuant to the existing statutes, rules, customs, practices and procedures.

"2. That the Defendants be required to select State juries from a cross-section of the community as a whole, at random, and that the selection of names for the jury list be taken solely from the voting list of Baltimore City, at random, in public, by machine.

"B. That the Defendants, and their agent, H. STAFFORD BULLEN, be prohibited from empanelling any jurors or juries from any list of names now in their or his possession, and that all lists of prospective jurors, together with all questionnaires received by them during the last two years be immediately surrendered to this Court.

"That a new reserve or list of names be acquired, pursuant to constitutional standards and safeguards hereinafter set forth by this Court, under strict supervision of three court-appointed masters."

There follows an elaborate, detailed method of selecting jurors, which plaintiffs demand be immediately put into effect by the defendant Judges and their Jury Commissioner.

■■ It is now clear that before giving the notice to the chief judge of the circuit, provided for in 28 U.S.C. § 2284 (1), the district judge to whom the application for injunction was presented should consider (a) whether a state statute of general and state-wide application is sought to be enjoined,[4] and (b) whether the claim that such statute is unconstitutional is substantial or plainly unsub-

---

3. This allegation is not clarified, and it does not appear that any motion with respect to the method of selecting juries has been made in any case to which any plaintiff is a party.

4. A three-judge court is not required when the attack is on an ordinance, regulation, custom, usage or practice, or a statute which affects only one political subdivision of a State and is not of general and state-wide application. Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967); Griffin v. County School Bd., 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964); Rorick v. Board of Com'rs, 307 U.S. 208, 59 S.Ct. 808, 83 L.Ed. 1242 (1939); Ex parte Public Nat'l Bank, 278 U.S. 101, 49 S.Ct. 43, 73 L.Ed. 202 (1928); Ellis v. Mayor and City Council of Baltimore, 352 F.2d 123 (4 Cir. 1965). Cf. Sailors v. Board of Education, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967). See Currie, The Three Judge District Court In Constitutional Litigation, 32 U.Chi.L.Rev. 73 (1964).

stantial,[5] and (c) whether the court has jurisdiction.[6]

The only statute claimed by plaintiffs to have state-wide application and to be unconstitutional is Article 51, section 1, of the Annotated Code of Maryland, 1957 ed., which provides:

"No person shall be selected and placed upon a panel as a juror who shall not have arrived at the age of twenty-five years."

Defendants argue, inter alia, that this statute does not apply ex proprio vigore to Baltimore City.[7] We find it unnecessary to consider that argument, because we are satisfied that plaintiffs' contention that the statute is unconstitutional is unsubstantial.

■ "The question may be plainly unsubstantial, either because it is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy'." Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 4, 78 L.Ed. 152 (1933). See also Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Jacobs v. Tawes, 250 F.2d 611 (4 Cir., 1957); Bell v. Waterfront Commission, 279 F.2d 853 (2 Cir., 1960).

No case holding a similar statute unconstitutional has been cited or found, although such statutes have existed in Maryland and other states for many years. On the other hand, the Supreme Court, in Brown v. Allen, 344 U.S. 443, at 471, 73 S.Ct. 397, at 414, 97 L.Ed. 469 (1954), said:

" * * * It was explained in 1880 by this Court, when composed of justices familiar with the evils the Amendment sought to remedy, as permitting a state to 'confine the selection [of jurors] to males, to freeholders, to citizens, to persons within certain ages or to persons having educational qualifications'. Strauder v. West Virginia, 100 U.S. 303, 310."

■ The requirement that a juror be at least twenty-five years of age is not unreasonable. A similar statute has been in effect in Massachusetts for many years. It was applied to the selection of jurors in the United States District Court for the District of Massachusetts by statute before 1957, and by practice thereafter. The statute and the practice have been held not to violate the federal Constitution by the Supreme Court of Massachusetts, the District Court and the First Circuit. Commonwealth v. Slaney, 350 Mass. 400, 215 N.E.2d 177 (1966); United States v. Golden, 235 F.Supp. 1020 (D.Mass., 1964); King v. United States, 346 F.2d 123 (1 Cir. 1965). See also Pope v. United States, 372 F.2d 710, 723 (8 Cir., 1967).

■ The contention that the twenty-five year requirement is unconstitutional is plainly unsubstantial, under the test prescribed in *Poresky*.

■ Defendants also argue that Article 51, section 1, is directory and not mandatory and that the exclusion of people under twenty-five is the result of custom and usage.[8] If that be so, it is a reason why this case should be heard by a single judge and not a three-judge court. Again, however, it is not necessary to decide that point, in view of the decision of this Court that the attack on the constitutionality of the statute is

5. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed. 2d 512 (1962); Jacobs v. Tawes, 250 F.2d 611 (4 Cir. 1957); Bell v. Waterfront Commission, 279 F.2d 853 (2 Cir. 1960).

6. Ex parte Poresky, supra; Jacobs v. Tawes, supra.

7. Albert v. White, 33 Md. 297 (1871); Ch. 308 of the Acts of 1860; Ch. 87 of the Laws of 1797.

8. Hollars v. State, 125 Md. 367, 93 A. 970 (1915); Johns v. Hodges, 62 Md. 525 (1883); Green v. State, 59 Md. 123 (1882). Indeed, plaintiffs allege in Paragraph XII of their complaint that jurors are selected at the "whim and caprice" of the Jury Commissioner of Baltimore City.

plainly unsubstantial. Any uncertainty created by the Maryland cases cited in note 8 as to whether the statute is mandatory or directory should be considered by the court, whether an ordinary district court or a statutory three-judge court, in deciding whether it should apply the abstention doctrine.[9]

■ Defendants further argue that this court has no jurisdiction to grant the relief requested, relying on a number of grounds, including the provisions of 28 U.S.C. § 2283.[10] That statute does not affect the question of federal jurisdiction as such, but is a limitation on the power of a district court, whether an ordinary district court of one judge or a statutory three-judge court, to grant certain relief. The question of federal jurisdiction may be considered by a single judge in deciding whether he should ask that a three-judge court be convened, Jacobs v. Tawes, 250 F.2d at 614, and it may well be true that the possibility of obtaining the relief requested may affect the substantiality of the question presented by the application for an injunction. It may also be true that this court lacks the power to require the defendant State Judges to follow the plan outlined in the complaint or any other specific plan for selecting jurors. But since this Court has found the attack on Article 51, section 1, to be plainly unsubstantial, it is not necessary to pass on those questions at this time. They may be argued before a single judge.

We conclude that this is not a case for a three-judge court, and deny the request that such a court be convened. The motion to dismiss the complaint will be set for further hearing, at which time all the points raised by the complaint and motion will be considered.

---

9.  Railroad Comm. of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Cf. McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); and see Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951).

10. See Stefanelli v. Minard, supra; Baines v. City of Danville, 337 F.2d 579 (4 Cir., 1964); Alexander Bird in the Ground v. District Court, 239 F.Supp. 981 (D.Mont., 1965).